IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE OF NEW JERSEY, | ) | |
| | ) | Civil Action |
| Plaintiff | ) | No. 07-CV-5298 |
| | ) | |
| vs. | ) | |
| | ) | |
| RELIANT ENERGY MID-ATLANTIC | ) | |
| POWER HOLDINGS, LLC, | ) | |
| RELIANT ENERGY POWER | ) | |
| GENERATION, INC., | ) | |
| SITHE ENERGIES, INC., | ) | |
| now known as Dynegy, Inc., and | ) | |
| METROPOLITAN EDISON CO., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STATE OF CONNECTICUT, | ) | |
| | ) | |
| Intervenor-Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RELIANT ENERGY MID-ATLANTIC | ) | |
| POWER HOLDINGS, LLC, | ) | |
| RELIANT ENERGY POWER | ) | |
| GENERATION, INC., | ) | |
| SITHE ENERGIES, INC., | ) | |
| now known as Dynegy, Inc., and | ) | |
| METROPOLITAN EDISON CO., | ) | |
| | ) | |
| Intervenor-Defendants | ) | |

\* \* \*

APPEARANCES:

        KEVIN P. AUERBACHER, ESQUIRE
        RUTH E. CARTER, ESQUIRE
            On behalf of Plaintiff State of New Jersey

        SCOTT N. KOSCHWITZ, ESQUIRE
            On behalf of Intervenor-Plaintiff State of
            Connecticut

A. KENT MAYO, ESQUIRE
DEBRA J. JEZOUIT, ESQUIRE
WILLIAM M. BUMPERS, ESQUIRE
      On behalf of Defendants/Intervenor-Defendants
      Reliant Energy Mid-Atlantic Power Holdings, Inc.,
      LLC, Reliant Energy Power Generation, Inc., and
      Sithe Energies, Inc., now known as Dynegy, Inc.

PAUL E. GUTERMANN, ESQUIRE
      On behalf of Defendant/Intervenor-Defendant
      Metropolitan Edison Co.


                    *    *    *

                O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on the Motion to

Dismiss Counts 1-5 and 7-11 of New Jersey's First Amended

Complaint Submitted by Defendants Reliant Mid-Atlantic Power

Holdings, LLC, Reliant Power Generation, Inc., and Sithe

Energies, Inc., which motion was filed February 19, 2009;

Defendant Metropolitan Edison Company's Motion to Dismiss

Plaintiff New Jersey's First Amended Complaint, which motion was

filed February 19, 2009; Defendant Metropolitan Edison Company's

Motion to Dismiss Plaintiff-Intervenor Connecticut's Complaint-

in-Intervention, which motion was filed April 23, 2009; and

Motion to Dismiss Counts 1-5 and 7-11 of Plaintiff-Intervenor

Connecticut's Complaint-in-Intervention Submitted by Defendants

Reliant Mid-Atlantic Power Holdings, LLC, Reliant Power

Generation, Inc., and Sithe Energies, Inc., which motion was filed April 27, 2009.  For the following reasons, I grant each motion in part and deny it in part, and dismiss each of defendant Metropolitan Edison's motions in part as moot.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred in Northampton County, Pennsylvania, which is located within this judicial district.

## PROCEDURAL HISTORY

Plaintiff, the State of New Jersey, initiated this action on December 18, 2007 by filing an eight-count civil Complaint against Reliant Energy Mid-Atlantic Power Holdings, LLC, Reliant Energy Power Generation, Inc., Reliant Energy, Inc., Centerpoint Energy, Sithe Energies, Inc., Metropolitan Edison Co., and GPU, Inc.  The claims arose from defendants' alleged construction or operation of the Portland Generating Station ("Portland plant" or "the Plant"), a coal-fired power plant located in Upper Mount Bethel Township, Northampton County, Pennsylvania, across the Delaware River from Warren County, New Jersey.  Specifically, plaintiff's claims arose from the

construction or operation of the Portland plant without permits required by the Clean Air Act ("the Act"), 42 U.S.C. §§ 7470-7503, and the Pennsylvania State Implementation Plan, which incorporates the federal program at 40 C.F.R. Part 52, Subpart NN, §§ 52.2020-52.2063.

On March 14, 2008, defendants filed motions to dismiss plaintiff's Complaint. By Orders dated March 27, 2008, I approved the parties' stipulations to dismiss defendants Reliant Energy, Inc., Centerpoint Energy, and GPU, Inc. without prejudice for plaintiff to rename them as defendants in this matter or to file subsequent complaints against them. Plaintiff responded to the motions to dismiss on April 4, 2008.

By Order dated October 14, 2008, I approved two stipulations indicating defendants' consent to the filing of an amended complaint in this matter, dismissed the pending motions to dismiss as moot, and directed plaintiff to file an amended complaint on or before November 5, 2008.

On November 5, 2008, plaintiff filed a motion for leave to file its First Amended Complaint. I granted that motion by Order dated November 25, 2008 and directed plaintiff to do so by December 10, 2008.

On December 4, 2008, plaintiff New Jersey filed its eleven-count First Amended Complaint against defendants Reliant Energy Mid-Atlantic Power Holdings, LLC., Reliant Energy Power

-4-

Generation, Inc., Sithe Energies, now known as Dynegy, Inc., and Metropolitan Edison Co.

On February 19, 2009, defendants Reliant Energy Mid-Atlantic Power Holdings, LLC., Reliant Energy Power Generation, Inc., and Sithe Energies (collectively "Reliant and Sithe") timely filed its within motion to dismiss Counts One through Five and Seven through Eleven of plaintiff New Jersey's First Amended Complaint. That same day, Metropolitan Edison Co. ("Met Ed") timely filed its motion to dismiss New Jersey's First Amended Complaint. New Jersey responded in opposition to each motion on March 23, 2009. On May 29, 2009, with leave of court, Reliant and Sithe filed a reply memorandum in support of their within motion to dismiss.

On October 31, 2008, the State of Connecticut filed a motion to intervene. By Order dated March 24, 2009, I granted the motion and directed Connecticut to conform its complaint-in-intervention to New Jersey's First Amended Complaint and to file it on or before April 3, 2009.

On April 3, 2009, Connecticut filed its complaint-in-intervention, styled "Amended Complaint", against the Reliant and Sithe defendants and Met Ed.[1]

---

[1]     On June 1, 2009, with leave of court, Connecticut amended its "Amended Complaint" solely for the purpose of modifying the caption to re-style the document "First Amended Complaint-in-Intervention" and to reflect that Connecticut is the plaintiff-intervenor in this action. Substantively,

(Footnote 1 continued):

On April 23, 2009, Met Ed filed its motion to dismiss Connecticut's Complaint-in-Intervention.  On April 27, 2009, Reliant and Sithe filed their within motion to dismiss Counts 1-5 and 7-11 of the Complaint-in-Intervention.  Connecticut responded in opposition to each motion on May 18, 2009.

New Jersey's First Amended Complaint and Connecticut's Complaint-in-Intervention assert identical claims, which are discussed more fully below.  In essence, Counts 1-10 of the complaints allege that at various times from 1982 to 2005, Met Ed, Reliant and/or Sithe modified units of the Portland plant, resulting in increased emissions, without first obtaining permits required by the Prevention of Significant Deterioration ("PSD") provision of the Act and implementing regulations, and Pennsylvania's operating permit program, 25 Pa. Code § 127.83. Those counts further allege that no defendant subsequently obtained permits regarding such modifications.

Count 11 of each complaint alleges that defendants operated or continue to operate the Portland plant in violation of Pennsylvania's operating permit program regulation, 25 Pa.Code § 127.503, established by Title V of the Act, 42 U.S.C. §§ 7661-7661f.  Specifically, the states aver that defendants' ongoing

_____

(Continuation of footnote 1):

the document is identical to Connecticut's "Amended Complaint".  Herein, I refer to this operative pleading, which appears at Docket Entry No. 126, as the Complaint-in-Intervention.  Collectively, I refer to the states' operative pleadings as "the complaints".

operating permit applications have failed to include relevant and required information about the modifications made to the Portland plant.

All four motions to dismiss the states' complaints seek dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  On June 1, 2009, I heard oral argument on the four motions to dismiss, and took the matter under advisement.  Hence this Opinion.

<u>STANDARD OF REVIEW</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides, in pertinent part:

> Every defense, in law or fact, to a claim for
> relief in any pleading, whether a claim,
> counterclaim, cross-claim, or third-party claim,
> shall be asserted in the responsive pleading
> thereto if one is required, except the following
> defenses may at the option of the pleader be made
> by motion: (1) lack of jurisdiction over the
> subject matter....

Pursuant to Rule 12(b)(1), a party may assert either a facial or factual challenge concerning whether the District Court properly has subject matter jurisdiction over the matter.  <u>Gould Electronics Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000).  A challenge to a complaint for failure to allege subject matter jurisdiction is known as a "facial" challenge.

When a defendant's motion presents a facial challenge, the court must treat the allegations of the complaint as true and draw all inferences favorable to the plaintiff.  <u>NE Hub Partners,</u>

-7-

L.P. v. CNG Transmission Corporation, 239 F.3d 333, 342 (3d Cir. 2001); see also Fed.R.Civ.P. 8(f).

Dismissal pursuant to a 12(b)(1) facial challenge is proper only where the court concludes that the claims clearly appear to be immaterial and made solely for the purpose of obtaining jurisdiction, or are wholly insubstantial and frivolous.  In other words, the claims must be "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-1409 (3d Cir. 1991) (internal citations omitted).

Because a court need not find a claim wholly frivolous or insubstantial in order to dismiss it under Rule 12(b)(6), the threshold to withstand a Rule 12(b)(1) motion to dismiss is significantly lower than that under Rule 12(b)(6).  Kehr Packages, Inc., 926 F.2d at 1409 (citing Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989)).  However, this lower threshold does not relieve plaintiff (as the party invoking jurisdiction) of its burden to demonstrate that this action is properly in federal court.  Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004).

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which

relief can be granted".  A 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits.  See Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2).  That rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  Twombly, 550 U.S. at 555, 127 S.Ct. at 1964, 167 L.Ed.2d at 940.

Additionally, in determining the sufficiency of a complaint, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the non-moving party.  Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003).  Nevertheless, a court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-1430 (3d Cir. 1997).

In considering whether the complaint survives a motion to dismiss, both the District Court and the Court of Appeals review whether it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  <u>Twombly</u>, 550 U.S. at 562, 127 S.Ct. at 1969, 167 L.Ed.2d at 944 (quoting <u>Car Carriers, Inc. v. Ford Motor Company</u>, 745 F.2d 1101, 1106 (7th Cir. 1984) (emphasis in original).

<u>FACTS</u>

Based upon the averments in plaintiff New Jersey's First Amended Complaint and intervenor-plaintiff Connecticut's First Amended Complaint-in-Intervention, which I must accept as true under the foregoing standards of review, and drawing all reasonable inferences from those facts in the light most favorable to the non-moving party, as I am also required to do, the pertinent facts are as follows.

The Portland plant is located on the Delaware River in Upper Mount Bethel Township, Northampton County, Pennsylvania. It includes five electricity-generating units.  Units 1 and 2 each consist of one coal-fired boiler and one steam turbine. Units 3, 4 and 5 each consist of a combustion turbine which burns natural gas or oil.

Met Ed was the first owner and operator of the Portland plant, and owned and operated it until November 1999.  From

-10-

November 1999 to May 2000, the Plant was owned and operated by Sithe Energies, Inc.  In May 2000, the Plant was purchased by Reliant Energy, Inc., which is the parent company to Reliant Energy Mid-Atlantic Power Holdings, Inc. (formerly Sithe Pennsylvania Holdings LLC) and Reliant Energy Power Generation, Inc.  Reliant Energy, Inc. and Reliant Energy Mid-Atlantic Power Holdings, Inc. have owned and operated the Plant since May 2000.

The Portland plant is upwind and directly across the Delaware River and state line from Warren County, New Jersey.  As a byproduct of the production of electricity and as a result of its operations, the Portland plant emits air pollutants including sulfur dioxide, nitrogen oxides, and particulate matter.  These pollutants are associated with adverse environmental impacts, including contribution to acid rain and creation of ozone and fine particulate matter, and adverse health effects, including exacerbation of respiratory illnesses.  Prevailing winds carry these air pollutants from the Portland plant to New Jersey and Connecticut, where they have caused and continue to cause harm to the air quality, citizens, and environments of both states.

At various times, defendants made modifications to Units 1 and 2 of the Portland plant, resulting in increased emissions of air pollutants, without first undergoing preconstruction review procedures required by the Clean Air Act's PSD (prevention of significant deterioration) provisions.

-11-

Specifically, MetEd replaced approximately 1,000 waterwall and waterwall slope tubes on Unit 1 during planned outages between 1983 and 1988 ("first Unit 1 physical changes"), as set forth in Count 1 of each complaint; replaced the entire high temperature superheater outlet header and 54 tubes in the radiant economizer on Unit 1 in 1986 ("second Unit 1 physical changes"), as set forth in Count 2 of each complaint; replaced 35 outlet header nipples on Unit 1 in 1982 ("third Unit 1 physical changes"), as set forth in Count 3 of each complaint; and replaced additional boiler waterwall tubes on Unit 1 in 1992 ("fourth Unit 1 physical changes"), as set forth in Count 5 of each complaint.

Additionally, during planned outages between 1980 and 1989, Met Ed replaced major portions of the waterwall and the waterwall slope tubes on Unit 2 ("first Unit 2 physical changes"), as set forth in Count 7 of each complaint.  During that same period, Met Ed also replaced substantial portions of the reheater section of the boiler on Unit 2 ("second Unit 2 physical changes"), as set forth in Count 8 of each complaint. In 1995, Met Ed replaced the entire platen and pendant superheater headers and associated pendant superheater tubes on Unit 2 ("third Unit 2 physical changes"), as set forth in Count 9 of each complaint.

After 2000, Reliant and/or Sithe replaced waterwall arch tubes on Unit 2 ("fourth Unit 2 physical change"), as set forth in Count 10 of each complaint.  Additionally, in 2001, Reliant replaced Superheater Dissimilar Metal Tube Weld Replacements on Unit 1 ("fifth Unit 1 physical change"), as set forth in Count 5 of each complaint.  In 2005, Reliant replaced waterwall tubes on Unit 1 ("sixth Unit 1 physical change"), as set forth in Count 6 of each complaint.

Defendants failed to obtain required permits before constructing these modifications.  Moreover, as set forth in Count 11 of each complaint, in submitting state operating permit renewal applications, defendants failed to include required information, including a plan describing the extent to which the Plant complies with applicable air quality standards or a description of how the Plant would achieve compliance with such standards.  In addition, defendants failed to acknowledge, on permit renewal applications, the alleged modifications to Units 1 and 2.

<u>CONTENTIONS</u>

<u>Contentions of Reliant and Sithe Defendants</u>

Reliant and Sithe seek dismissal of Counts 1-5 and 7-11 of each complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  They do not seek dismissal of Count 6 of either Complaint.

In support of their motions to dismiss, Reliant and Sithe advance four arguments.  First, they contend that the PSD provisions of the Act do not authorize a claim against Reliant or Sithe under the facts alleged in Counts 1-4 and 7-9 because neither Reliant nor Sithe owned or operated the Portland plant at the time the modifications alleged in those counts were made.

Second, they aver that the states' PSD claims in Counts 1-5 and 7-10 are barred by the applicable statute of limitations and the concurrent remedy doctrine, and cannot be characterized as "continuing violations".

Third, Reliant and Sithe contend that this court lacks subject matter jurisdiction over the states' Title V claims alleged in Count 11 of each Complaint.

Finally, in the alternative, they argue that if Counts 1-5 and 7-10 are not dismissed in their entirety, allegations of unspecified "other modifications" in those counts fail to satisfy the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure because they do not provide sufficient factual information to put defendants on notice of the claims. Therefore, Reliant and Sithe seek to have paragraphs 78, 88, 98, 107, 117, 127, 138, 148, 158 and 168 of New Jersey's First Amended Complaint and paragraphs 73, 83, 93, 103, 113, 123, 134, 144, 154 and 164 of Connecticut's Complaint-in-Intervention stricken.

Regarding their first argument, Reliant and Sithe contend that because the PSD provisions of the Act apply to pre-construction permits, only the owner or operator of a plant is subject to liability for failure to comply with those provisions. Reliant or Sithe therefore contend that they are not responsible for any failure to secure a PSD permit before commencing construction of any modifications between 1980 and 1995, as alleged in Counts 1-4 and 7-9, because all of those violations occurred at least four years before Reliant acquired the Portland plant in November 1999.

Moreover, Reliant and Sithe aver that the PSD program was not designed to regulate post-construction activities. Therefore, they contend that they are not subject to PSD liability for continuing to operate the Portland plant despite any failure on the part of a prior owner to secure a PSD permit before commencing construction of any major modification. Accordingly, Reliant and Sithe aver that Counts 1-4 and 7-9 fail to state a claim against those defendants and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Regarding their second argument, Reliant and Sithe aver that the PSD claims against them in Counts 1-5 and 7-10 are barred by the statute of limitations and the concurrent remedy doctrine.  They contend that the states' PSD claims in those

counts are barred by the five-year statute of limitations set forth in 28 U.S.C. § 2462 because the claims accrued at the time the alleged modifications were made, all of which occurred more than five years before commencement of this lawsuit in December 2007.

Additionally, Reliant and Sithe contend that the states cannot avoid application of the statute of limitations by characterizing their PSD claims as "continuing violations". They aver that treating the states' claims as continuing violations would effectively eliminate the statute of limitations. In addition, Reliant and Sithe aver that a majority of courts have taken the position that failure to secure a pre-construction PSD permit is a one-time violation, not a continuing violation.

Further, Reliant and Sithe contend that by its plain language, the statute of limitations bars a suit unless commenced "within five years from the date when the claim <u>first accrued</u>", not within five years of a subsequent violation allegedly occurring under a continuing violation theory. 28 U.S.C. § 2462 (emphasis added).

Moreover, Reliant and Sithe contend that the states' PSD claims for injunctive relief are time-barred to the same extent as its PSD claims for civil penalties under the concurrent remedy doctrine. Specifically, they aver that because the states' legal claims for civil penalties in Counts 1-5 and 7-10

are time-barred by the applicable statute of limitations, their claims for injunctive relief are similarly barred because they arise from the same factual allegations.

Reliant and Sithe further aver that the states' claims do not fit any exception to the concurrent remedy doctrine because the states have brought these actions as private citizens, respectively, not as sovereign bodies.

Reliant and Sithe also contend that the statute of limitations is not tolled by the discovery rule, which, if applied, would keep the limitation period from beginning to run until all elements of a claim are complete.  They contend that because all elements of the states' Clean Air Act claims were complete at the time of the respective alleged violations, that is, at the time of construction, the discovery rule does not apply.

With regard to their third argument, Reliant and Sithe contend that this court lacks subject matter jurisdiction over the states' Title V claim set forth in Count 11 of each complaint.  They aver that the Title V permit program is administered by the states subject to Environmental Protection Agency ("EPA") supervision.  It specifically mandates that each state's Title V program offer an opportunity for public comment and hearing, as well as an opportunity for judicial review in state court of all final permit action.  The Title V permit

program does not provide for federal district court jurisdiction over decisions made by states as part of the permitting process.

Reliant and Sithe assert that Pennsylvania's Title V program allows a person to contest any aspect of the permit process by filing a protest with the Pennsylvania Department of Environmental Protection ("PADEP"), appeal that decision to the Pennsylvania Environmental Hearing Board, and ultimately appeal to the Pennsylvania court system.

Moreover, they contend that Title V does provide an avenue for federal judicial review, but that such review is available exclusively regarding the EPA's determinations with respect to a permit.  Specifically, Reliant and Sithe argue that if the EPA reviews a proposed Title V permit and does not object within 45 days, any person may challenge the EPA's failure to do so by petitioning the EPA Administrator.

Reliant and Sithe contend that if, after reviewing such a petition, EPA does not object to the proposed permit, Title V permits judicial review of the denial.  However, such an action may be filed only in the court of appeals for the appropriate circuit, not in a federal district court.

Reliant and Sithe further argue that the claims alleged in Count 11 are not properly in this court because they constitute a collateral attack on a validly issued permit.  They contend that the states do not allege that Reliant and Sithe have

-18-

failed to comply with the Portland plant's Title V permit. Therefore, the states' dispute is actually with Pennsylvania, through PADEP, for issuing the permit.  Reliant and Sithe aver that because the states failed to exercise administrative challenge opportunities, their citizen suit, filed more than eight years after PADEP issued the Portland plant's Title V permit, is untimely and in the wrong forum.

Additionally, Reliant and Sithe aver that they have met all requirements required relating to application for, and compliance with, the Portland plant's Title V permit.  They contend that to whatever extent an incomplete application may have been filed for the permit, that application was filed by Met Ed and therefore has no bearing on Reliant and Sithe.

Finally, regarding their fourth argument, Reliant and Sithe contend that paragraphs 78, 88, 98, 107, 117, 127, 138, 148, 158 and 168 of New Jersey's First Amended Complaint, and paragraphs 73, 83, 93, 103, 113, 123, 134, 144, 154 and 164 of Connecticut's Complaint-in-Intervention, contain unspecified and speculative allegations of "other modifications".  They aver that these open-ended allegations amount to a "fishing expedition". Such allegations would substantially expand the scope and expense of discovery in this matter, and should be dismissed as lacking specificity pursuant to Rule 8 of the Federal Rules of Civil Procedure and Twombly, supra.

<u>Contentions of Defendant Met Ed</u>

Met Ed seeks dismissal of all claims against it pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  In support of its motions, Met Ed sets forth three main contentions.  First, it contends that Counts 5, 6, and 10 of each complaint should be dismissed because they relate to alleged modifications made in 2000, 2001 and 2005, after Met Ed was no longer the owner and operator of the Portland plant.

Second, Met Ed avers that Count 11 should be dismissed because Met Ed is not, and never was, the holder of a Title V permit for the Portland plant; because the states failed to seek administrative and judicial review with the Pennsylvania Environmental Hearing Board and in Pennsylvania courts; and because this court lacks subject matter jurisdiction over that claim.

Third, Met Ed contends that the claims contained in Counts 1-4 and 7-9 are barred by the applicable statute of limitations.

Specifically, regarding its first contention, Met Ed avers that because it only owned the Portland plant until November 1999, it cannot be held liable for allegedly unlawful activities which took place at the Plant after that time. Therefore, it contends that Counts 5, 6 and 10 should be

dismissed because the states concede that Met Ed only owned the Plant until November 1999.

Regarding its second contention, Met Ed asserts that Count 11 should be dismissed against Met Ed for three reasons. First, it avers that it cannot be in violation of any Title V requirements because it is not now, and never was, the holder of the Portland plant's Title V permit.  Met Ed states that although it submitted the initial Title V permit application to PADEP in 1995, the permit was not issued until January 2000, after Met Ed sold the Plant in November 1999.  Therefore, Met Ed contends that to the extent the states allege violations of the terms of the permit, failure to supplement the permit after it was issued, or a violation in connection with permit renewal, such allegations cannot state a claim against Met Ed.

Second, Met Ed contends that the states are barred from collaterally attacking PADEP's issuance of the Title V permit for reasons also articulated by Reliant and Sithe, as set forth above.  Third, also for reasons articulated by Reliant and Sithe set forth above, Met Ed avers that this court lacks subject matter jurisdiction over the claims contained in Count 11.

Met Ed's final main contention is that Counts 1-4 and 7-9 of the complaints are barred by the five-year statute of limitations set forth in 28 U.S.C. § 2462, and that the discovery rule is inapplicable to toll the statute of limitations.  Because

this argument is also advanced by Reliant and Sithe, and is set forth above, I do not reiterate it here.  Met Ed also avers that the doctrine of equitable tolling does not apply here because the states do not allege that Met Ed actively misled the states or that the states have been prevented in some extraordinary way from asserting their rights.

Moreover, Met Ed contends that injunctive relief is not available against Met Ed because it has no rights to the Portland plant, and therefore cannot fulfill the injunctive remedies sought by the states.  Met Ed further avers that because the states' legal remedies are barred by the applicable statute of limitations, any claims for injunctive relief are similarly barred under the concurrent remedy doctrine, as also argued by Reliant and Sithe.

<u>Contentions of the States</u>[2]

<u>Contentions of the States in Response to Reliant Defendants</u>

In response to Reliant and Sithe's motion to dismiss, the states advance four arguments.  First, the states contend that this court has subject matter jurisdiction over their PSD claims because the Clean Air Act authorizes suits against "any person" who is alleged to have violated or to be in violation of an emission limitation or constructs any modified major emitting

---

[2]     Although New Jersey and Connecticut filed separate responses to the respective motions to dismiss, their arguments mirror one another. Therefore, I address them together.

-22-

facility without a PSD permit, or who is alleged to have violated
or to be in violation of any condition of a PSD permit.
Specifically, the states contend that because the Reliant
defendants are operating the Plant in violation of an emission
limitation and PSD requirements, this court may properly hear
their PSD claims set forth in Counts 1-4 and 7-9.

Second, the states contend that the § 2462 statute of
limitations does not bar their claims for injunctive relief
because that statute applies only to actions for "any civil fine,
penalty, or forfeiture, pecuniary or otherwise."  28 U.S.C. §
2462.  Moreover, the states aver that their claims for injunctive
relief are not barred by the concurrent remedy doctrine because
the injunctive relief they seek (an order requiring compliance
with the Act, including installation of air pollution control
equipment) is not effectively the same as a legal remedy such as
civil penalties.

Additionally, the states contend that the concurrent
remedy doctrine does not apply in citizen suits brought by the
government to uphold the public interest in environmental
protection.  The states aver that because they seek to benefit
the public, rather than protect private interests, § 2462 does
not apply.

Third, the states contend that this court has
jurisdiction over their Title V claims (Count 11) because

the Act authorizes citizen suits against any person who is alleged to have violated, or to be in violation of, an emission standard or limitation, or who constructs a new major emitting facility without an appropriate permit.  See 42 U.S.C. § 7604(a). The states aver that because they are suing to enforce an emission standard or limitation, their Title V claim is permitted by § 7604.

Additionally, the states argue that Title V imposes an ongoing obligation on the permittee to provide supplemental information about the permittee's compliance with the Act.  The states contend that because a Title V permit does not allow a source to violate other provisions of the Act, Reliant is liable under Title V for violating applicable Act requirements and failing to provide necessary supplemental information.

Fourth, the states contend that paragraphs 78, 88, 98, 107, 117, 127, 138, 148, 158 and 168 of New Jersey's First Amended Complaint, and paragraphs 73, 83, 93, 103, 113, 123, 134, 144, 154 and 164 of Connecticut's First Amended Complaint-in-Intervention, which refer to "other modifications" which may have been made by the Reliant defendants, do not make allegations, and therefore no notice was required.

<u>Contentions of the States in Response to Met Ed</u>

The states offer four arguments in response to Met Ed's motions to dismiss.  First, the states contend that their claims

-24-

are not barred by the § 2462 statute of limitations for three reasons: (1) the statute of limitations is tolled by the continuing violation doctrine because the states allege ongoing violations; (2) the statute of limitations is tolled by the discovery rule because Met Ed's failure to report the modifications prevented the states from discovering the violations, and determining when discovery occurred is a question of fact which should not be resolved on a motion to dismiss; and (3) they are entitled to equitable tolling because Met Ed failed to report the modifications, thereby misleading the states.

Second, the states aver that their claims for injunctive relief are proper for reasons they articulate in response to Reliant and Sithe's motion to dismiss, as set forth above.  In addition, they contend that this court has authority to issue injunctions pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and therefore can require all defendants to install and/or fund best available control technology ("BACT") controls to prevent excess emissions in violation of the Act.

In response to Met Ed's argument that it is not subject to injunctive relief because it no longer controls the Plant, the states contend that this court could order injunctive relief against Met Ed by directing Met Ed to fund installation of BACT. The states also assert that the appropriation of injunctive

relief should be determined at the remedy stage rather than on a motion to dismiss.

Third, the states contend that Met Ed's request for dismissal of Counts 5, 6 and 10 should be denied because those counts do not allege liability against Met Ed.

Finally, the states contend that their Title V claims (set forth in Count 11) are proper for three reasons.  First, as they contend in response to Reliant and Sithe's motion to dismiss Count 11, they aver that this court has subject matter jurisdiction over Count 11 because that count is authorized by 42 U.S.C. § 7604(a).  Specifically, they argue that Met Ed operated the Plant despite having failed to obtain a permit containing conditions to ensure that the owner or operator complies with all applicable requirements.  Thus, the states allege that Met Ed operated the Plant in violation of applicable emission standards or limitations, giving rise to a cause of action under § 7604(a).

Second, the states contend that their Title V claim is proper regardless of whether Met Ed ever held a Title V permit because Met Ed violated applicable emission standards or limitations, as defined by the Act, by failing to apply for a Title V permit and by failing to obtain a valid plan approval from PADEP for their modifications.

Third, the states aver that their Complaint is not a collateral attack on the permit application, but rather alleges violations of "emission standards" and "limitations" as defined by the Act.  The states argue that they are not alleging wrongdoing on the part of the permitting authority, that is, that the permitting authority should have rejected Met Ed's Title V permit application.  Instead, they are alleging that Met Ed violated Title V of the Act by failing to obtain a proper permit.

## DISCUSSION

### Statute of Limitations

Defendants seek dismissal of Counts 1-5  and 7-10 of each Complaint on the basis that those counts are barred by the five-year statute of limitations set forth in 28 U.S.C. § 2462 because the claims accrued at the time the alleged modifications were made, all of which occurred more than five years before commencement of this lawsuit in December 2007.[3]

Although the statute of limitations is an affirmative defense, it may be raised in a motion to dismiss where the plaintiff's failure to comply with the limitations period is apparent from the face of the pleadings.  In evaluating the statute of limitations on a motion to dismiss, the court is limited to the allegations of the complaint, the exhibits attached to the complaint, and matters of public record.

---

[3]     Specifically, Reliant and Sithe seek dismissal of Counts 1-5 and 7-10, and Met Ed seeks dismissal of Counts 1-4 and 7-9 on this basis.

<u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384
nn.1-2.  "If the bar is not apparent on the face of the
complaint, then it may not afford the basis for a dismissal of
the complaint under Rule 12(b)(6)."  <u>Robinson v. Johnson</u>, 313
F.3d 128, 135 (3d Cir. 2002).

Section 2462 provides, in pertinent part:

> Except as otherwise provided by Act of Congress,
> an action, suit or proceeding for the enforcement
> of any civil fine, penalty, or forfeiture,
> pecuniary or otherwise, shall not be entertained
> unless commenced within five years from the date
> when the claim first accrued....

28 U.S.C. § 2462.

Reliant and Sithe aver that a majority of courts have
taken the position that failure to secure a pre-construction PSD
permit is a one-time violation, not a continuing violation.
Therefore, they contend that the states' claims in Counts 1-5 and
7-10 are barred by § 2462 because the claims first accrued when
the alleged modifications were made.  Alternatively, defendants
contend that to the extent those counts seek injunctive relief,
they are barred by the concurrent remedy doctrine.

Here, the states seek primarily injunctive relief, in
the form of requiring defendants to comply with the Act and other
applicable statutes and regulations.  However, the states also
seek assessment of a civil penalty against defendants for alleged
past and ongoing violations.

The states contend that because PSD imposes continuing obligations on modified sources, the discovery rule tolls the statute of limitations, and therefore their legal remedies are not barred by § 2462. Moreover, they contend that the concurrent remedy doctrine does not bar their claims because the equitable remedies they seek are not effectively the same as a legal remedy, and that in any event, the concurrent remedy doctrine does not apply to citizen suits brought to uphold the public interest.

By its plain language, the statute of limitations in § 2462 applies to claims for legal relief, not claims for equitable relief. National Parks and Conservation Association, Inc. v. Tennessee Valley Authority, 502 F.3d 1316, 1327 (11th Cir. 2007). However, the concurrent remedy doctrine bars concurrent equitable claims where the party's legal remedies are time-barred. Id. (citing Cope v. Anderson, 331 U.S. 461, 464, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947), which states that "equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy").

Here, although the facts giving rise to the states' legal and equitable claims are the same, the remedies are not necessarily concurrent. See Gruca v. United States Steel Corporation, 495 F.2d 1252, 1257-1258 (3d Cir. 1974). Equity jurisdiction is not concurrent where a legal remedy cannot

achieve the purpose sought to be achieved by an equitable remedy.
See id.

Here, the states' requested equitable remedies
(essentially, court orders directing defendants to comply with
the Act) cannot be achieved by a legal remedy (that is, a civil
fine or penalty).  Accordingly, I conclude that, to the extent
the states' claims for legal relief may be barred by § 2462,
their claims for injunctive relief arising from the same facts
are not barred by the concurrent remedy doctrine.[4]

Moreover, the states aver that the discovery rule
applies to their claims for civil penalties, and that therefore
the statute of limitations does not bar those claims.
Specifically, the states contend that their claims did not accrue
until they discovered the alleged violations.  Additionally, the
states contend that when discovery occurred is a question of fact
which cannot be addressed on a motion to dismiss.

By the plain language of § 2462, the statute of
limitations begins to run when the claim accrues.  Generally,
under the federal discovery rule, a claim will accrue when the
plaintiff discovers, or with due diligence should have

---

[4]    The states argue that the concurrent remedy doctrine is not
applicable against the government when the government seeks equitable relief
in its official enforcement capacity.  Because I have concluded that the
remedies sought by the states are not concurrent, I do not address this
argument.

discovered, the injury which forms the basis for the claim. Romero v. Allstate Corporation, 404 F.3d 212, 222 (3d Cir. 2005).

This court has applied the discovery rule in the Clean Air Act context.  See L.E.A.D. v. Exide Corporation, 1999 U.S. Dist. LEXIS 2672, at *14 (E.D.Pa. Feb. 19, 1999) (Van Antwerpen, J.).  Analogizing to the Clean Water Act, the L.E.A.D. court noted that the discovery rule is appropriately applied to claims under the Clean Air Act because air pollution violations are difficult for the public to detect, and the Act has a broad goal of protecting and enhancing air quality.

Defendants cite two cases in which courts declined to apply the discovery rule to Clean Air Act claims.[5]  In United States v. Murphy Oil USA, 143 F.Supp.2d 1054, 1085 (W.D.Wis. 2001), the Wisconsin District Court noted that the language of § 2462 does not contemplate difficulty in detecting a violation as a relevant factor in determining when the limitations period runs.  Moreover, the court remarked that unlike the Clean Water Act, the Clean Air Act does not rely entirely on self-reporting. Therefore, the court determined that the policy considerations set forth in L.E.A.D. v. Exide Corporation do not justify application of the discovery rule in Clean Air Act cases.

However, the Murphy Oil court concluded that "[i]f it is determined at trial that defendant made affirmative efforts to

---

[5]      I note that both cases addressed the issue at the summary judgment stage, not, as here, on a motion to dismiss.

prevent plaintiff from discovering the information that was necessary to discover defendant's alleged violations under the Clean Air Act," plaintiff would be permitted to rely on the discovery rule to toll the statute of limitations.  143 F.Supp.2d at 1085.

Similarly, in Pennsylvania Department of Environmental Protection v. Allegheny Energy, 2008 WL 4960090, at *4 (W.D.Pa. Nov. 18, 2008)(McVerry, J.), although the district court concluded that the discovery rule did not apply to a claim under the Clean Air Act, plaintiff was permitted to establish facts at trial to determine whether the doctrine of equitable tolling should apply.

Under the doctrine of equitable tolling, a statute of limitations can be tolled when principles of equity would make its rigid application unfair.  Such a situation arises if (1) defendant has actively misled plaintiff; (2) plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) plaintiff has timely asserted his rights mistakenly in the wrong forum.  Urcinoli v. Cathel, 546 F.3d 269, 272 (3d Cir. 2008).

Accepting the facts set forth above as true, as I am required to do on this motion to dismiss, I am unable to conclude on the face of the pleadings that the states have failed to comply with the statute of limitations, to the extent that it

applies to the states' claims for civil penalties under the Clean Air Act.  The states do not contend that all of the alleged violations occurred within the five years preceding the initiation of this lawsuit.  Rather, they contend that the discovery rule applies to their claims for civil penalties arising from alleged violations which occurred outside the limitations period.  I agree.

The parties have cited no controlling law on this issue, and I conclude that the two cases relied upon by defendants for the proposition that the discovery rule does not apply in actions under the Clean Air Act are unpersuasive in this context.  On the contrary, I conclude that the one district court case from this district cited by the parties, L.E.A.D. v. Exide Corporation, is persuasive.

The L.E.A.D. court concluded that the discovery rule applies in Clean Air Act cases in part because violations are difficult to detect.  Although the Murphy Oil and Allegheny Energy courts concluded otherwise, I note that the plaintiff in those cases was the United States.  Specifically, the Murphy Oil court remarked that "plaintiff had access to files concerning defendant and made on site visits to the facility to inspect its operation well before it issued the notices of violation or received [self-] reports from defendant."  Murphy Oil, 143 F.Supp.2d at 1085.

In the within action, plaintiff and intervenor-plaintiff are the State of New Jersey and the State of Connecticut, respectively, not the federal government. Their actions seek to minimize air pollution allegedly carried from the Plant, located in Pennsylvania, to their respective states. (See complaints, paragraph 2.) This furthers the Act's broad goal of protecting and enhancing air quality. See L.E.A.D., supra. Therefore, following the case law of this district, I conclude that the discovery rule applies in this action under the Clean Air Act.

It is unclear from the face of the complaints when the states learned of the alleged violations, and the extent to which they exercised reasonable diligence. Romero, 404 F.3d at 222. Therefore, I conclude that dismissal of Counts 1-5 and 7-10 on this basis is improper on a Rule 12(b)(6) motion. Robinson, 313 F.3d at 135.[6]

Accordingly, I deny defendants' motions to dismiss to the extent they seek dismissal Counts 1-5 and 7-10 on the basis that those Counts are barred by the statute of limitations set forth in 28 U.S.C. § 2462.

---

[6]     Alternatively, I would permit the states to present evidence at trial to establish whether the doctrine of equitable tolling applies. See Urcinoli, 546 F.3d at 272.

<u>Counts 1-4 and 7-9 Against Reliant and Sithe</u>

Reliant and Sithe contend that Counts 1-4 and 7-9 should be dismissed because Met Ed owned and operated the Plant at the time the violations alleged in those counts occurred. Reliant and Sithe aver that the PSD program requires a source to obtain a permit and comply with other obligations before construction or modification commences.  Therefore, they contend that they cannot be held liable for any failure on the part of Met Ed to secure a pre-construction permit.  Moreover, Reliant and Sithe argue that the "citizen suit" provision of the Act does not authorize citizen actions for pre-construction violations against entities who did not perform the alleged modifications.

The states contend that the Clean Air Act authorizes suits against "any person" who is alleged to have violated, or to be in violation of, an emission limitation or who constructs any modified major emitting facility without a PSD permit, or who is alleged to have violated or to be in violation of any condition of a PSD permit.  Specifically, the states contend that the Reliant defendants are operating the Plant in violation of an emission limitation and PSD.

Moreover, the states aver that BACT is an emissions limitation, and that compliance with BACT is initially triggered by construction of a modification, but is a continuing obligation after construction. Therefore, they aver that Reliant and Sithe

-35-

are liable for the modifications alleged in Counts 1-4 and 7-9
regardless of whether they owned or operated the Plant at the
time the modifications were made.

The "citizen suit" provision of the Act provides, in
pertinent part:

> Except as provided in subsection (b) of this
> section, any person may commence a civil action on
> his own behalf –
>
> > (1) against any person ... who is alleged to
> > have violated (if there is evidence that
> > the alleged violation has been repeated)
> > or to be in violation of (A) an emission
> > standard or limitation under this
> > chapter ..., [or]
>
> > (3) against any person who proposes to
> > construct or constructs any new or
> > modified major emitting facility without
> > a permit required under part C of
> > subchapter I of this chapter (relating
> > to significant deterioration of air
> > quality) or part D of subchapter I of
> > this chapter (relating to nonattainment)
> > or who is alleged to have violated (if
> > there is evidence that the alleged
> > violation has been repeated) or to be in
> > violation of any condition of such
> > permit.

42 U.S.C. § 7604(a).

The Act defines BACT, in part, as "an emission
limitation based on the maximum degree of reduction of each
pollutant subject to regulation under this chapter emitted from
or which results from any major emitting facility, which the
permitting authority...determines is achievable for such
facility...."  42 U.S.C. § 7479(3).  Thus, by the plain language

-36-

of § 7479(3), BACT is an "emission limitation" as defined by the Act.  The states contend that this definition creates a stand-alone obligation for owners and operators to comply with BACT regardless of whether they constructed the modification.

Reliant and Sithe suggest that because § 7479 "contains only a definition for BACT and does not address applicability", that provision of the Act does not impose PSD requirements on an owner or operator other than the entity who actually made the modification.  (Reliant and Sithe's reply brief, page 2.)  In support of their argument that a post-construction owner or operator cannot be held liable for failure to secure a pre-construction permit, Reliant and Sithe rely on Sierra Club v. Morgan, 2007 WL 3287850, at *7 (W.D.Wis. Nov. 7, 2007).

However, Sierra Club addresses claims only for failure to secure a pre-construction permit.  It does not address whether a post-construction owner or operator may be liable under § 7604(a) for being in violation of "an emission standard or limitation" under the Act, that is, failure to comply with BACT, as opposed to being in violation of a permit.

The PSD provisions of the Act do not appear to expressly address the obligations of post-construction owners and operators.  Section 7475 addresses only pre-construction requirements, that is, the permitting process and analysis.  The states rely on United States v. Ohio Edison Company,

2003 U.S. Dist. LEXIS 2357, at *20 (S.D. Ohio, Jan. 17, 2003), in support of their position that the PSD provisions require ongoing compliance regardless of whether a permit was issued, and to whom.

The <u>Ohio Edison</u> court concluded that "the statute itself provides for the requirement of a preconstruction permit as well as ongoing operation in compliance with CAA standards for sources 'for which a permit is required', not simply those sources for which a permit has been granted." <u>Id.</u> (<u>citing</u> 42 U.S.C. § 7475(a)(7), which states that "the person who owns or operates, or proposes to own or operate, a major emitting facility <u>for which a permit is required under this part</u> agrees to conduct such monitoring as may be necessary to determine the effect which emissions from any such facility may have, or is having, on air quality in any area which may be affected by emissions from such source" (emphasis added)).

Although <u>Ohio Edison</u> does not specifically address whether a post-construction owner or operator is liable for a pre-construction owner's failure to secure a pre-construction permit, and is not binding on this court, I am persuaded by its reasoning.  Specifically, I find persuasive its conclusion that "it is illogical to conclude that a defendant may only be held liable for constructing a facility, rather than operating such facility, without complying with the permit requirements." <u>Id.</u>

(citing United States v. American Electric Power Service Corporation, 137 F.Supp.2d 1060, 1066 (S.D. Ohio 2001).  A logical extension of this reasoning is that an owner or operator may be held liable for failure to comply with CAA standards simply because its predecessor owner failed to secure the appropriate permit.

Accepting the facts alleged as true, I conclude that the Plant is a major emitting facility for which a permit is required under the PSD provisions of the Act, and that Reliant and Sithe currently own and/or operate the Plant without complying with standards set forth in the Act.  Therefore, as discussed above, they may be held liable for failure to comply with BACT.  Accordingly, I deny Reliant and Sithe's motion to dismiss Counts 1-4 and 7-9 on the grounds set forth above.

<u>Claims for Injunctive Relief Against Met Ed</u>

Met Ed argues that the complaints against Met Ed should be dismissed to the extent that they seek injunctive relief because Met Ed no longer owns the Plant, and therefore cannot fulfill the injunctive remedies sought by the states.

Neither complaint's prayer for relief distinguishes between defendants.  Instead, each complaint requests that this court order the following injunctive relief, referring to "defendants" collectively:

> (A)  Permanently enjoin further operation of Portland unless the Act, including PSD and

Title V, the federal PSD and Title V
regulations, the applicable Pennsylvania
regulations, and the applicable SIP are
complied with;

(B)   Require Defendants to implement and/or fund
appropriate air pollution control equipment
and measures at Portland as necessary to
comply with PSD and Title V of the Act;

(C)   Order Defendants to remedy its past
violations;

(D)   Order Defendants to take other appropriate
actions to remedy, mitigate, or offset the
harm to public health and the environment
caused by the violations of the Act and
requiring Defendants to install and operate
BACT at the Portland Plant...;

(E)   Order Defendants to apply for permits that
are in conformity with the requirements of
the PSD, Title V and Pennsylvania programs;
[and]

(F)   Order Defendants to conduct audits of its
operations to determine if any additional
modifications have occurred that are not
included in this Complaint that would require
Defendants to meet the requirements of PSD,
Title V and the Pennsylvania statutes and
regulations, and report the results of these
audits to New Jersey[.]

(Complaints, Prayer for Relief, paragraphs A-F.)

At oral argument, the states conceded that Met Ed would

not be able to comply with a court order directing it to install

pollution control measures, because it no longer controls the

Plant.  However, they contended that Met Ed should be directed to

pay for the installation of BACT at the Plant, and that this

remedy would constitute injunctive relief.

-40-

The states have offered no legal authority, and this court is aware of none, in support of their position that the payment of money by Met Ed for the purpose of installing BACT at the Plant would constitute injunctive relief.  On the contrary, injunctive relief is considered an extraordinary remedy which is available only when legal remedies (<u>e.g.</u>, money damages) do not suffice.  <u>See</u> <u>Frank's GMC Truck Center, Inc. v. General Motors Corporation</u>, 847 F.2d 100, 102 (3d Cir. 1988).

Because the states concede that the only "injunctive relief" with which Met Ed could comply, would be the payment of money, I conclude that they are essentially seeking a legal remedy, and not injunctive relief.  Accordingly, I dismiss the complaints to the extent they seek injunctive relief against Met Ed.

<u>Counts 5-6 and 10 Against Met Ed</u>

Met Ed contends that Counts 5-6 and 10 should be dismissed against Met Ed because those claims refer to alleged modifications made in 2000, 2001, and 2005, and Met Ed owned the Plant only until November 1999.  The states respond that Counts 5-6 and 10 do not allege any liability on the part of Met Ed.  The states do not dispute that Met Ed ceased ownership of the Plant in 1999.[7]

---

[7]      See paragraph 12 of each complaint, which alleges that "Metropolitan Edison was the first owner and operator of the Portland Plant and owned and operated the Portland Plant until November 1999."

Counts 5-6 and 10 do not refer to any actions taken by Met Ed.  On the contrary, Counts 5-6 refer only to actions allegedly taken by Reliant, and Count 10 refers only to actions allegedly taken by "Reliant and/or Sithe".  Accordingly, I dismiss as moot defendant Met Ed's motions to dismiss to the extent they seek dismissal of those Counts.

<u>Count 11</u>

Defendants contend that Count 11 should be dismissed for two reasons.  First, they aver that this court lacks subject matter jurisdiction over the states' Title V claim because the states failed to pursue either of the two exclusive avenues established by Congress for challenging PADEP's issuance of the Plant's Title V permit.  Specifically, defendants argue that the states could have sought relief only by (1) administrative protest and, ultimately, relief in Pennsylvania state courts; or (2) petition to the EPA to object to the permit, with appeal of a denial to the United States Court of Appeals for the Third Circuit.

Alternatively, Reliant and Sithe aver that Count 11 should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim because they are not liable for Met Ed's failure to submit a complete Title V permit; and Met Ed avers that it cannot be liable because it never actually held the Plant's Title V permit.

-42-

Title V of the Act, 42 U.S.C. § 7661-7661f, establishes an operating permitting program for certain sources, to be administered by the states.  Title V requires sources subject to PSD to obtain Title V operating permits.  42 U.S.C. § 7661a(a). Pursuant to applicable Pennsylvania regulations, a "major stationary source" is required to obtain a Title V operating permit.  25 Pa. Code § 121.1.

Title V requires each state's Title V program to provide an opportunity for public comment and hearing on applications, application renewals, and application revisions, as well as an opportunity for review, in state court, of the final permit action.  42 U.S.C. § 7661a(b)(6).  Additionally, Title V provides that if the EPA administrator reviews a proposed permit and does not object within 45 days, any person may challenge the EPA's failure to do so by petitioning the administrator within 60 days after the 45-day comment period expires.  42 U.S.C. § 7661d(b).

If, upon reviewing such a petition, the EPA does not object to the issuance of the permit, the petitioner may appeal the denial pursuant to 42 U.S.C. § 7607.  Id.  Section 7607 provides that a request for judicial review of a final decision of the EPA administrator "may be filed only in the United States Court of Appeals for the appropriate circuit".  42 U.S.C. § 7607(b)(1).

-43-

Reliant and Sithe aver that the Act is therefore clear that federal district courts have no jurisdiction to hear a citizen suit challenge to Title V permits, pursuant to § 7604. In support of this proposition, Reliant and Sithe rely on Romoland School District v. Inland Empire Energy Center, LLC, 548 F.3d 738 (9th Cir. 2008).  The Romoland court concluded that plaintiffs were challenging a permit itself, not defendant's compliance with the terms of its Title V permit.  The court held that a plaintiff could not bring an action in federal district court alleging that the terms of a Title V permit were inconsistent with other requirements of the Act.  Id. at 754-756.

However, the Romoland court also noted that "Title V permits are by no means wholly insulated from the [Clean Air Act's] citizen suit provision."  Id. at 754.  To the contrary, the court remarked that to the extent a defendant violates a term or condition of its Title V permit, or seeks to begin building and operating a plant without obtaining a permit under Title V, either of those violations would be subject to a citizen suit under § 7604.  Id.

Specifically, § 7604 authorizes a citizen suit for, among other things, violation of an emission standard or limitation including any "standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter".  42 U.S.C. § 4604(f)(4).  Thus, it is clear that

violation of a Title V permit is subject to a citizen suit under § 7604.

Here, Count 11 alleges that defendants have failed to include relevant and required information in their respective applications for a Title V permit and subsequent applications for permit renewal, and failed to supplement their applications regarding modifications to Units 1 and 2.  (First Amended Complaint, paragraphs 172-174; Complaint-in-Intervention, paragraphs 176-179.)  As a result, the states contend that the Title V permits issued for the Plant do not include all applicable PSD requirements, including requirements for BACT emissions limitations for Units 1 and 2.  (First Amended Complaint, paragraph 175; Complaint-in-Intervention, paragraph 179.)

However, although the states allege that defendants have violated Title V, they do not allege that any defendant has operated the Plant, or continues to operate the Plant, in violation of a provision of their Title V _permit_.  Therefore, although I agree with the states that they would be permitted to bring a citizen suit to challenge violation of defendants' respective Title V permits for the Plant, I nevertheless conclude that their Title V claim as set forth in Count 11 must fail.

Because the states effectively challenge defendants' submission of allegedly incomplete permit applications, leading to defective Title V permits and/or renewal permits, I conclude that the states were required to pursue the process set forth in § 7661d.  Under that section, as discussed above, any person who objects to the issuance of a permit or renewal permit may petition the EPA administrator.  Judicial review of the administrator's decision is available only through the applicable Court of Appeals, not in district court.  42 U.S.C. §§ 7661d(b)(2), 7607.

Accordingly, I grant defendants' motions to dismiss Count 11 of each complaint, and dismiss that Count from each complaint.

### Allegations of "Other Modifications"

Finally, I address Reliant and Sithe's contention that paragraphs 78, 88, 98, 107, 117, 127, 138, 148, 158 and 168 of New Jersey's First Amended Complaint and paragraphs 73, 83, 93, 103, 113, 123, 134, 144, 154 and 164 of Connecticut's Complaint-in-Intervention should be stricken because they contain unspecified and speculative allegations of "other modifications". These paragraphs appear in each of Counts 1-10 of each complaint, and each paragraph avers that "Upon information and belief, subject to further investigation and discovery, Defendants may have made other modifications as defined by the PSD regulations

to" the applicable Unit.

Reliant and Sithe contend that these paragraphs are speculative and do not provide notice to defendants of the basis and grounds for the allegations contained therein, as required by Twombly, supra.  The states aver that these paragraphs do not make any allegations, and therefore the states are not required to place defendants on notice concerning these paragraphs.

Under the federal notice pleading standard, each claim for relief must include a "short plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  To the extent paragraphs 78, 88, 98, 107, 117, 127, 138, 148, 158 and 168 of New Jersey's First Amended Complaint and paragraphs 73, 83, 93, 103, 113, 123, 134, 144, 154 and 164 of Connecticut's Complaint-in-Intervention are intended to state a claim for "other modifications", they do not give defendants fair notice of the claims.  Twombly, supra.  However, as each paragraph indicates, a clearer statement of the claim may be possible after discovery and further investigation.[8]

---

[8]     Reliant and Sithe aver that the states should not be allowed to engage in a "fishing expedition" that would substantially expand the scope and expense of discovery in this matter.  However, I note that under the Federal Rules of Civil Procedure, the scope of discovery is broad, and the parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense".  Fed.R.Civ.P. 26(b)(1).

Moreover, the court may, for good cause, order discovery of "any matter relevant to the subject matter involved in the action".  Id.  To the extent the parties are unable to amicably resolve any discovery matter, I note that by my Standing Order dated March 19, 2007, I have referred all such discovery disputes to United States Magistrate Judge Henry S. Perkin.

Accordingly, because these paragraphs are vague and refer to unspecified violations, I grant Reliant and Sithe's motion to dismiss those paragraphs and dismiss them from each complaint, without prejudice for each state to seek leave to file supplemental pleadings pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, if appropriate, after engaging in discovery.

<u>CONCLUSION</u>

For all the foregoing reasons, I grant defendant Metropolitan Edison Company's motions to dismiss to the extent that the motions seek dismissal of New Jersey's First Amended Complaint and Connecticut's First Amended Complaint-in-Intervention for injunctive relief.  I dismiss as moot defendant Met Ed's motions to dismiss to the extent those motions seek to dismiss Counts 5-6 and 10 against Met Ed.

I grant all of the motions to dismiss to the extent they seek dismissal of Count 11, and I dismiss that Count in its entirety.

I also grant Reliant and Sithe's motions to dismiss, to the extent the motions seek to strike paragraphs 78, 88, 98, 107, 117, 127, 138, 148, 158 and 168 of New Jersey's First Amended Complaint and paragraphs 73, 83, 93, 103, 113, 123, 134, 144, 154 and 164 of Connecticut's Complaint-in-Intervention.  I strike

-48-

those paragraphs without prejudice for the states to seek leave to file supplemental pleadings, if appropriate, after discovery.

      In all other respects, all motions are denied.