| | |
|---|---|
| STATE OF NEW JERSEY, | ) |
| | ) Civil Action |
| Plaintiff | ) No. 07-cv-5298 |
| | ) |
| vs. | ) |
| | ) |
| RRI ENERGY MID-ATLANTIC POWER | ) |
| HOLDINGS, LLC, | ) |
| RRI ENERGY POWER GENERATION, | ) |
| INC., | ) |
| SITHE ENERGIES, INC., | ) |
| now known as Dynegy, Inc., and | ) |
| METROPOLITAN EDISON CO., | ) |
| | ) |
| Defendants | ) |
| | ) |
| and | ) |
| | ) |
| STATE OF CONNECTICUT, | ) |
| | ) |
| Intervenor-Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| RRI ENERGY MID-ATLANTIC POWER | ) |
| HOLDINGS, LLC, | ) |
| RRI ENERGY POWER GENERATION, | ) |
| INC., | ) |
| SITHE ENERGIES, INC., | ) |
| now known as Dynegy, Inc., and | ) |
| METROPOLITAN EDISON CO., | ) |
| | ) |
| Intervenor-Defendants | ) |

*    *    *

APPEARANCES:

KEVIN P. AUERBACHER, ESQUIRE
On behalf of Plaintiff State of New Jersey

SCOTT N. KOSCHWITZ, ESQUIRE
On behalf of Intervenor-Plaintiff State of
Connecticut

              A. KENT MAYO, ESQUIRE
              WILLIAM M. BUMPERS, ESQUIRE
              DEBRA J. JEZOUIT, ESQUIRE
              ANDREW L. SWOPE, ESQUIRE
                   On behalf of Defendants/Intervenor-Defendants
                   Reliant Energy Mid-Atlantic Power Holdings, Inc.,
                   LLC, Reliant Energy Power Generation, Inc., and
                   Sithe Energies, Inc., now known as Dynegy, Inc.

              DAVID H. QUIGLEY, ESQUIRE
              PAUL E. GUTERMANN, ESQUIRE
                   On behalf of Defendant/Intervenor-Defendant
                   Metropolitan Edison Co.

                          *    *    *

                       O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on the Notice of Motion
and Plaintiff's and Plaintiff-Intervenor's Memorandum of Law in
Support of Motion to Strike Affirmative Defenses of Metropolitan
Edison Company, which notice and memorandum were filed
December 7, 2009 by plaintiff the State of New Jersey and
intervenor-plaintiff the State of Connecticut; and the Notice of
Motion and Plaintiff's and Plaintiff-Intervenor's Memorandum of
Law in Support of Motion to Strike Affirmative Defenses of RRI
Energy Mid-Atlantic Power Holdings, LLC, RRI Energy Power
Generation, Inc. and Sithe Energies, Inc., N/K/A Dynegy, Inc.,
which notice and memorandum were also filed December 7, 2009 by
plaintiff and intervenor-plaintiff.

On January 7, 2010, the Opposition to Plaintiff's and Plaintiff-Intervenor's Motion to Strike Affirmative Defenses of RRI Energy Mid-Atlantic Power Holdings, LLC, RRI Energy Power Generation, Inc. and Sithe Energies, Inc., N/K/A Dynegy, Inc. was filed. Also on January 7, 2010, Metropolitan Edison Company's Memorandum of Law in Opposition to Plaintiff's and Plaintiff-Intervenor's Motion to Strike Affirmative Defenses was filed by defendant Metropolitan Edison Company.

Plaintiff's and Plaintiff-Intervenor's Reply Memorandum in Support of Motion to Strike Affirmative Defenses of Defendants was filed February 4, 2010.

For the following reasons, I grant in part, grant in part as unopposed, and deny in part the states' motion to strike Met Ed's affirmative defenses; and I deny the states' motion to strike RRI and Sithe's affirmative defenses.

<u>JURISDICTION</u>

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

<u>VENUE</u>

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred in Northampton County, Pennsylvania, which is located within this judicial district.

PROCEDURAL HISTORY[1]

This matter arises from defendants' alleged construction or operation of the Portland Generating Station ("Portland plant" or "the Plant"), a coal-fired power plant located in Upper Mount Bethel Township, Northampton County, Pennsylvania, across the Delaware River from Warren County, New Jersey. Plaintiff and intervenor-plaintiff allege that defendants constructed and/or operated the Portland plant without permits required by the Clean Air Act ("the Act"), 42 U.S.C. §§ 7470-7503, and the Pennsylvania State Implementation Plan, which incorporates the federal program at 40 C.F.R. Part 52, Subpart NN, §§ 52.2020-52.2063.

The operative complaints in this matter, New Jersey's First Amended Complaint filed December 4, 2008 and Connecticut's First Amended Complaint-in-Intervention filed April 3, 2009[2], named as defendants Reliant Energy Mid-Atlantic Power Holdings, LLC., Reliant Energy Power Generation, Inc., Sithe Energies, now known as Dynegy, Inc., and Metropolitan Edison Co. ("Met Ed").

_____

[1] The procedural history of this matter is set forth more fully in the Opinion accompanying my September 30, 2009 Order granting in part and denying in part defendants' motions to dismiss. Moreover, the facts were fully summarized in that Opinion. In lieu of repeating them here, I incorporate those recitations of facts and procedural history by reference.

[2] Connecticut's pleading was originally styled "Amended Complaint", but was amended June 1, 2009 with leave of court solely for the purpose of modifying the caption to re-style the document "First Amended Complaint-in-Intervention" and to reflect that Connecticut is the plaintiff-intervenor in this action. Herein I refer to that pleading as the "Complaint-in-Intervention". Collectively, I refer to the states' operative pleadings as "the complaints".

-4-

By Notice of Change of Party Name filed July 1, 2009, defendants Reliant Energy Mid-Atlantic Power Holdings, LLC and Reliant Power Generation, Inc. (previously referred to by the court as "Reliant defendants") advised the court of the change of their legal names to RRI Energy Mid-Atlantic Power Holdings, LLC and RRI Energy Power Generation, Inc., respectively ("RRI"). By Order dated October 16, 2009, I directed the Clerk of Court to mark the docket in accordance with that Notice.

New Jersey's First Amended Complaint and Connecticut's Complaint-in-Intervention assert effectively identical claims. In essence, Counts 1-10 of the complaints allege that at various times from 1982 to 2005, Met Ed, RRI and/or Sithe modified units of the Portland plant, resulting in increased emissions, without first obtaining permits required by the Prevention of Significant Deterioration ("PSD") provision of the Act and implementing regulations, and Pennsylvania's operating permit program, 25 Pa. Code § 127.83. Those counts further allege that no defendant subsequently obtained permits regarding such modifications.

Count 11 of each complaint alleged that defendants operated or continue to operate the Portland plant in violation of Pennsylvania's operating permit program regulation, 25 Pa.Code § 127.503, established by Title V of the Act, 42 U.S.C. §§ 7661-7661f. Specifically, the states averred that defendants' ongoing operating permit applications have failed to include relevant and

required information about the modifications made to the Portland plant.

By Order and Opinion dated September 30, 2009, I granted in part and denied in part the RRI and Sithe defendants' motions to dismiss the complaints, and granted in part and denied in part Met Ed's motions to dismiss the complaints. Specifically, I dismissed Count 11 of each complaint, concluding that the states' were effectively attempting to challenge defendants' submission of allegedly incomplete permit applications, leading to defective Title V permits and/or renewal permits, rather than actually alleging violation of a Title V permit. Therefore, I concluded that the states were required to pursue the process set forth in 42 U.S.C. § 7661a, pursuant to which any person who objects to the issuance of a permit or renewal permit may petition the EPA administrator, with judicial review of the administrator's decision available only through the applicable Court of Appeals, not in district court.

I also granted the motions to the extent they sought to strike paragraphs 78, 88, 98, 107, 117, 127, 138, 148, 158 and 168 of New Jersey's First Amended Complaint; and paragraphs 73, 83, 93, 103, 113, 123, 134, 144, 154 and 164 of Connecticut's Complaint-in-Intervention. Specifically, I agreed with defendants that the unspecified and speculative allegations of "other modifications" contained in those paragraphs did not

satisfy the federal notice pleading standard in Federal Rule of Civil Procedure 8(a)(2) because they did not provide notice to defendants of the basis and grounds for the allegations contained therein, as required by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In all other respects, I denied the motions to dismiss. RRI and Sithe filed answers to each complaint on October 28, 2009. That same day, Met Ed filed answers to each complaint. By Order dated November 24, 2009, I granted in part plaintiff's motion for enlargement of time to file motions to strike affirmative defenses, and established a December 7, 2009 deadline for filing such motions. My November 24, 2009 Order also established a January 7, 2010 deadline for defendants to respond in opposition to any such motion. The within motions were filed December 7, 2009 and the responses were filed January 7, 2010. The states filed a reply brief, with leave of court, on February 4, 2010. Hence this Opinion.[3]

STANDARD OF REVIEW

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the court may "strike from a pleading an insufficient

---

[3]    Because New Jersey's complaint and Connecticut's complaints mirror each other, RRI and Sithe's answers are, for purposes of this motion, materially the same. Similarly, Met Ed's answers are materially the same for purposes of this motion. The states jointly filed one motion challenging RRI and Sithe's affirmative defenses, and jointly filed one motion challenging Met Ed's affirmative defenses. Accordingly, herein I address RRI and Sithe's defenses to both complaints as one set of defenses, and I address Met Ed's defenses to both complaints as one set of defenses.

defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "An affirmative defense is insufficient if it is not recognized as a defense to the cause of action." Total Containment, Inc. v. Environ Products, Inc., 1992 WL 208981, at *1 (E.D.Pa. August 19, 1992)(Gawthrop, J.). A motion to strike is decided "on the basis of the pleadings alone." Id.

Motions to strike pursuant to Rule 12(f) are generally disfavored and usually will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." River Road Development Corporation v. The Carlson Corporation, 1990 WL 69085, at *3 (E.D.Pa. May 23, 1990) (VanArtsdalen, S.J.)(citing 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1382 (1969)).

Striking a pleading is a drastic remedy which should be used sparingly, partly because of the practical difficulty of deciding cases without a factual record. North Penn Transfer, Inc. v. Victaulic Company of America, 859 F.Supp. 154, 158 (E.D.Pa. 1994)(Van Antwerpen, J.). A court should not grant a motion to strike a defense "unless the insufficiency of the defense is 'clearly apparent.'" Cipollone v. Liggett Group, Inc., 789 F.2d 181, 188 (3d Cir. 1986).

A motion to strike an affirmative defense is not appropriate when the sufficiency of the defense depends on disputed issues of fact. Linker v. Custom-Bilt Machinery Inc., 594 F.Supp. 894, 898 (E.D.Pa. 1984)(Kelly, James McGirr, J.). Moreover, a motion to strike is not the appropriate procedure to determine disputed or unclear questions of law. Id. However, motions to strike save time and expense by making it unnecessary to litigate claims that will not affect the outcome of the case. North Penn Transfer, 859 F.Supp. at 159.

## CONTENTIONS OF THE PARTIES

### States' Contentions

To the extent the states' two motions set forth some of the same arguments, I summarize their contentions together, followed by a summary of the states' contentions regarding specific other affirmative defenses set forth, respectively, in Met Ed's Answer and RRI and Sithe's Answer.

### *Equitable Defenses*

The states contend that all of defendants' equitable defenses set forth in both Answers should be stricken. Specifically, regarding each defendant's Third Defense (laches), the states contend that laches is not available as a defense to a suit brought by the government to enforce a public right or protect a public interest. Here, the states aver that they are acting as "private attorneys general" under the Act's citizen-

suit provisions and therefore stand in the shoes of the federal
government.  The states contend that because the United States is
not subject to a laches defense in this context, neither are the
states subject to a laches defense when they stand in the shoes
of the federal government.

Similarly, the states further contend that defendants'
equitable estoppel defense set forth in each Answer's Fourth
Defense fails as a matter of law because the doctrine of
equitable estoppel is available against the government only in
the most serious of circumstances.  They aver that defendants
cannot satisfy the elements of estoppel against the government
because defendants cannot show that the government engaged in
"affirmative misconduct", i.e., specifically encouraging a
mistake of which the government then took advantage.  The states
contend that defendants cannot establish the traditional elements
of estoppel.  The states further aver that because they stand in
the shoes of the federal government for purposes of this action,
defendants' equitable estoppel defense thus fails against the
states.

Finally, the states contend that defendants cannot
maintain a "balance of equities" defense as set forth in Count
Thirteen of Met Ed's Answer, which contends that the states'
claims for injunctive relief are barred because the equities
weigh against such relief, and Count Seventeen of RRI and Sithe's

Answer, which contends that the states' claims for equitable relief are contrary to the public interest.

The states aver that these assertions are not defenses and that, to the extent such assertions could be construed as an "unclean hands" defense, it should be rejected here because Congress has authorized broad equitable relief to service important public purposes. Moreover, the states contend that a "balance of equities" or "unclean hands" defense is not available to claims brought in the public interest by sovereign governments and citizens.

*States' Contentions Regarding Met Ed's Affirmative Defenses*

Regarding affirmative defenses specific to Met Ed, the states set forth three main arguments.

First, the states contend that Met Ed's Third, Fifth, Tenth and Fifteenth Defenses should be stricken because they seemingly ignore my September 30, 2009 Order and Opinion upholding the states' civil penalty claims, dismissing their claims for injunctive relief against Met Ed, and concluding that the concurrent remedy doctrine does not bar the states' claims for injunctive relief. Therefore, the states aver that those defenses violate the law of the case.

Second, the states contend that Met Ed's Sixth and Eighth Defenses are insufficient as a matter of law because they merely dispute the states' interpretation of existing law.

Specifically, the states aver that their interpretation of the Act and implementing regulations do not constitute "retroactive rulemaking" in violation of the Administrative Procedure Act or the Clean Air Act. Similarly, the states contend that Met Ed's Ninth Defense should be stricken because it challenges the states' interpretation of the Act, not the Act itself.

Finally, the states contend that Met Ed's Fourteenth Defense, which avers that the states' interpretation of the Act and implementing regulations "effects an unconstitutional delegation of legislative power of authority," should be stricken because the states are suing under the citizen-suit provision of the Act, which Met Ed does not contend is an unconstitutional delegation of legislative power of authority. The states contend that in a delegation challenge, the relevant inquiry is whether the statute itself has unconstitutionally delegated legislative power to the agency.

*States' Contentions Regarding RRI and Sithe's Affirmative Defenses*

The states contend that RRI and Sithe's Sixth Defense (Inadequate Notice) should be stricken because RRI and Sithe admitted in their Answer that they received notice of the states' asserted claims as required by the Act. Further, the states contend that to the extent RRI and Sithe are asserting that they received inadequate notice of any claims which are not set forth in the Amended Complaints, such an assertion is not a defense to

-12-

the present operative Complaints.  Thus, the states contend there is no set of facts upon which RRI and Sithe can establish an inadequate notice defense.

Finally, the states contend that RRI and Sithe's Ninth (projects performed by prior owner) and Fifteenth (injunctive relief is not authorized by statute) Defenses should be stricken because the court has already ruled that RRI and Sithe, as post-construction owners or operators, may be liable under the Act for operating the Portland plant without complying with PSD permitting requirements.  The states aver that because my September 30, 2009 Order is the law of this case, RRI and Sithe cannot continue to litigate the issue of whether they may be liable for modifications constructed by Met Ed.

Defendants' Contentions

As an initial matter, all defendants argue that the states' motion should be denied because they have not articulated any specific prejudice which they would suffer if defendants are permitted to proceed with each affirmative defense as pled. Defendants contend that prejudice is a touchstone for deciding a motion to strike, and that plaintiffs therefore cannot succeed on a motion to strike without showing actual prejudice which they would suffer.

*Defendants' Contentions Regarding Equitable Defenses*

Because defendants Met Ed and the RRI and Sithe defendants set forth similar arguments regarding equitable defenses, I summarize all of defendants' contentions on those defenses together.

Regarding the states' assertion that a laches defense may not be brought against the government, defendant Met Ed asserts that agency action or acquiescence is relevant to determining that amount of a civil penalty for violation of an environmental statute. Met Ed contends that it should be afforded the opportunity to develop facts concerning governmental inaction or acquiescence, and suggests that these factual issues likely overlap with the states' attempts to prove that the discovery rule and equitable tolling should apply to toll the otherwise applicable statutes of limitation.

Moreover, RRI and Sithe contend that there is an unsettled question of law regarding whether laches applies to private parties bringing suit under the citizen suit provision of the Act, and a Rule 12(f) motion to strike is not meant to determine such questions of law. Like Met Ed, RRI and Sithe contend that there are numerous fact questions concerning their laches defense, and further assert that the applicability of a laches defense is more properly considered on a motion for summary judgment.

Regarding equitable estoppel, defendants contend that the states concede, and the case law on which the states rely acknowledge, that there are cases in which an equitable estoppel defense may lie against the government. Therefore, defendants aver that their equitable estoppel defenses do not fail as a matter of law because there is some possibility of recovery under some set of facts. Moreover, they assert that a factual inquiry is inappropriate on a motion to strike, and therefore defendants should be permitted to develop a factual record on the issue.

Finally, defendants contend that their "balance of equities" defenses should not be stricken. Specifically, defendants contend that development of a factual record through discovery, and resolution of questions of law, are necessary before determining the extent to which equitable considerations should influence the outcome of this case. Moreover, RRI and Sithe aver that, contrary to the states' characterization, their "balance of equities" defense is not an unclean hands defense.

Moreover, as a general matter, Met Ed contends that the states err in contending that none of its equitable defenses may stand if such defenses would not stand against the federal government. Met Ed avers that citizen suits are not actually "federal enforcement" of rights and that plaintiffs in a citizen suit do not represent the public at large in the same way that the federal government would. Additionally, Met Ed contends that

only one of the cases on which the states rely actually involves a citizen suit, and the remainder involve actions by the federal government.

*Met Ed's Contentions*

Met Ed contends that its Sixth Defense properly asserts that the states' claims are barred because the states' interpretation of the Act and corresponding implementing regulations constitute "retroactive rulemaking" in violation of the Administrative Procedures Act ("APA") and the Clean Air Act. It further contends that its Eighth Defense properly asserts that the states' "interpretations of the NSPS and PSD requirements...are unsupported by the current regulations implementing the Clean Air Act, and would require, to be valid and enforceable, new regulations promulgated in full compliance with the Clean Air Act and the Administrative Procedure Act, including notice and comment." (Met Ed's answers, Eighth Defense.)

Specifically, Met Ed argues that these defenses are valid because they highlight unresolved legal issues between the parties, and that the defenses indicate Met Ed's intention to defend itself against incorrect interpretations of the Act and regulations. Met Ed contends that because it is entitled to challenge the government's interpretation of the regulations and

statutes involved in this action, its Sixth and Eighth Defenses
are not "clearly insufficient" and should not be stricken.

Regarding its Ninth Defense, Met Ed contends that this
defense is not an attempt to prevent the states from requiring
compliance with the law or an effort by Met Ed to challenge the
facial validity of the law and regulations. Rather, Met Ed avers
that the Ninth Defense, which provides that the states' claims
are barred as <u>ultra vires</u> because they attempt to retroactively
change the legal status of acts conducted in full compliance with
the EPA's contemporaneous interpretation of the Act and
implementing regulations, is proper because it merely preserves
Met Ed's right to challenge any interpretations which are at odds
with the EPA's interpretations. Met Ed contends this is
permissible in light of the states' averment that they "stand in
the shoes" of the EPA, and avers that because there are
unresolved questions of fact and law regarding this issue, the
defense should not be stricken.

Regarding its Fourteenth Defense, Met Ed contends this
defense properly asserts that the states' "interpretation of the
Clean Air Act and implementing regulations in support of their
claims effects an unconstitutional delegation of legislative
power or authority." (Met Ed's Answers, Fourteenth Defense.) It
avers that the states mischaracterize this defense as a claim

that the citizen suit itself constitutes an unlawful delegation of legislative authority to citizen plaintiffs.

Rather, Met Ed contends, this defense points out that at the time Met Ed made the challenged modifications, the EPA (in whose shoes the states purport to stand) had not enforced the applicable law or regulations in the manner that the states would enforce them if successful in this suit. Met Ed asserts that because there are unresolved questions of fact and law regarding application of the law and regulations in this matter, the defense should not be stricken.

Finally, Met Ed contends that its Fifteenth Defense, which asserts that the states' Amended Complaints fail to state a claim upon which relief can be granted, is properly an affirmative defense here despite my prior rulings on defendants' motions to dismiss. Specifically, Met Ed avers that there is a fact question regarding when the states discovered the alleged violations. Thus, Met Ed contends that if the states fail to show, through the development of facts in discovery, that the discovery rule tolls the statute of limitations in this case, the states therefore will have failed to state a claim upon which relief can be granted. Accordingly, Met Ed avers that the defense should not be stricken.

Regarding their inadequate notice defense, RRI and
Sithe contend that they did not admit they received adequate
notice.  On the contrary, they aver that their Answers state that
they received a letter from New Jersey purporting to give notice
of New Jersey's intent to file a citizen suit, but deny that the
letter provided adequate notice.  Moreover, they aver that
because they dispute the sufficiency of New Jersey's notice
letters, the sufficiency of the defense is not clearly apparent,
and therefore the defense should not be stricken.

RRI and Sithe contend that their Ninth and Fifteenth
Defenses should not be stricken on the basis of my prior ruling
on defendants' motions to dismiss.  Specifically, RRI and Sithe
assert that because analysis of the motions to dismiss required
me to accept all of the states' factual assertions as true, my
conclusions that a PSD permit was required for the Portland plant
and that RRI and Sithe continued to operate the plant without
complying with applicable PSD standards were derived solely from
the allegations set forth in the states' complaints.

RRI and Sithe contend that on a motion to strike, the
burden rests with plaintiffs to establish that the challenged
defense could not possibly prevent recovery under any pleaded or
inferable set of facts.  RRI and Sithe aver that because they
have denied many of the states' allegations, discovery is

necessary to determine whether the facts regarding RRI and Sithe's liability, as pled, are true. Thus, they contend that the states have not established the insufficiency of the defenses.

## DISCUSSION

### *Prejudice*

Initially, defendants argue that the states' motions must fail in their entirety because they fail to allege any prejudice resulting from the challenged affirmative defenses. The states respond that they seek to strike only those affirmative defenses which raise no factual or legal controversy, in an attempt to clean up the pleadings and streamline the litigation. Moreover, they aver that "it would be extremely burdensome to demonstrate prejudice or injury more significant than the real prejudice that results from having to litigate immaterial and insufficient affirmative defenses." (States' reply, page 3.) The states further assert that courts routinely strike meritless affirmative defenses even without a showing of prejudice.

As discussed above, motions to strike are disfavored and usually will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." River Road, 1990 WL 69085, at *3. Moreover, even if a motion to

strike is "'technically appropriate and well-founded,' motions to strike defenses as insufficient are often denied in the absence of a showing of prejudice to the moving party." <u>Wilson v. King</u>, 2010 WL 678102, at *4 (E.D.Pa. Feb. 24, 2010)(Tucker, J.) (internal citation omitted).

Here, plaintiffs assert that to the extent the challenged defenses are meritless, they would be prejudiced by having to litigate them, including engaging in discovery. This court has indicated that the extent to which litigating challenged material would cause "excessive delay, expense, or encroachment" is relevant to whether it should be stricken. <u>McInerney v. Moyer Lumber and Hardware, Inc.</u>, 244 F.Supp.2d 393, 402 (E.D.Pa. 2002). <u>See also</u> <u>F.D.I.C. v. Modular Homes, Inc.</u>, 859 F.Supp. 117, 120 (D.N.J. 1994), which notes that a motion to strike "may serve to hasten resolution of cases by eliminating the need for discovery, which in turn saves time and litigation expenses."

Thus, based on plaintiffs' assertion that they will incur expense and burden if required to litigate immaterial defenses, I conclude that they have sufficiently alleged prejudice. Accordingly, I consider the merits of their motion to strike.

*Equitable Defenses*

The states contend that defendants' laches defense should be stricken because it cannot apply to the states, who they argue "stand in the shoes" of the federal government in the context of a citizen suit such as this.  Defendants respond that it is an unsettled question of law whether laches may apply in a citizen-suit case, and moreover aver that if it does apply, it is a fact-laden inquiry which cannot be resolved on a motion to strike.  I agree with defendants.

Generally, the United States government is not subject to the defense of laches in enforcing its rights.  United States v. Gera, 409 F.2d 117, 120 (3d Cir. 1969).  In the Clean Air Act context, this court has noted that "the public should not be punished for any alleged negligence on the part of EPA enforcement," and therefore concluded that the defense of laches was not applicable against the federal government. United States v. Chevron, U.S.A. Inc., 757 F.Supp. 512, 515 (E.D.Pa. 1990).

Plaintiffs contend that they are acting as "private attorneys general" who stand in the shoes of the federal government under the citizen-suit provision of the Act, and therefore should not be subject to a laches defense which would not be available in a suit brought by the government.  In support of this contention, plaintiffs rely on Student Public Interest

-22-

Research Group of New Jersey, Inc. v. P.D. Oil & Chemical
Storage, Inc. ("P.D. Oil") for the proposition that citizen
plaintiffs should not have fewer rights to enforce the statute
than government agencies.  627 F.Supp. 1074, 1085 (D.N.J. 1986).
See also Natural Resources Defense Council, Inc. v. Fox,
909 F.Supp. 153, 160 (S.D.N.Y. 1995).

However, whether laches may apply to private parties
bringing suit under the citizen-suit provision of the Act is not
a settled question of law.  See, e.g., Grand Canyon Trust v.
Tucson Electric Power Company, 391 F.3d 979, 987 (9th Cir. 2004),
in which the court "assume[d], without deciding, that laches is
available as a defense against a private attorney general suing
under the Clean Air Act".  Because the court should not grant a
motion to strike a defense unless the insufficiency of the
defense is clearly apparent, Cipollone, 789 F.2d at 188, and
because a motion to strike is not the appropriate procedure to
determine disputed or unclear questions of law, Linker v. Custom-
Bilt Machinery Inc., 594 F.Supp. at 898, I deny the states'
motion to strike defendants' laches defense.[4]

---

[4]    Moreover, a laches defense involves fact questions.  To establish
laches, a defendant must establish (1) lack of diligence by the plaintiff, and
(2) prejudice to the defendant.  Costello v. United States, 365 U.S. 265, 282,
81 S.Ct. 534, 543, 5 L.Ed.2d 551, 562 (1961).  Therefore, "a decision as to
the applicability of the laches defense can only be made through a thorough
examination of the facts...and should not be dismissed in pretrial motions."
Cintron Beverage Group, LLC v. DePersia, 2008 WL 1776430, at *2 (E.D.Pa. April
15, 2008)(R. Kelly, S.J.).  See also Linker, 594 F.Supp. at 898.

Second, regarding equitable estoppel, the states contend that the defense should be stricken because they stand in the shoes of the government, and equitable estoppel is available against the government only in the most serious of circumstances, and that the government may not be estopped on the same terms as any other litigant. They further aver that defendants cannot satisfy the heightened elements of estoppel against the government because they cannot show affirmative misconduct by the government.

To succeed on an equitable estoppel argument against the government, a defendant must prove (1) a misrepresentation by the government, (2) which she reasonably relied upon, (3) to her detriment, and (4) affirmative misconduct. DiPeppe v. Quarantillo, 337 F.3d 326, 335 (3d Cir. 2003). Defendants aver that they should be permitted to pursue relevant factual information through discovery before a determination on the merits of this defense.

In support of their assertion that defendants cannot show affirmative government misconduct in this case, the states cite United States v. Nevada Power Company, 1990 U.S.Dist.LEXIS 18998 (D.Nev. June 1, 1990). However, Nevada Power rejected defendant's equitable estoppel defense at the summary judgment stage, not on a motion to strike. I conclude that the extent to which defendants can succeed on this defense is fact-sensitive

and cannot be determined at this stage.  See <u>Sinacole v. iGate</u> <u>Capital</u>, 2006 WL 3759744, at *8 (W.D.Pa. Dec. 19, 2006)(citing <u>Kosakow v. New Rochelle Radiology Associates, P.C.</u>, 274 F.3d 706, 725 (2d Cir. 2001) for the proposition that "[w]hether equitable estoppel applies in a given case is ultimately a question of fact").

Because a motion to strike an affirmative defense is not appropriate when the sufficiency of the defense depends on disputed issues of fact, I deny the states' motion to strike defendants' equitable estoppel defense.  <u>Linker</u>, 594 F.Supp. 898.

Finally, regarding defendants' "balance of equities" defense, the states assert that this is not a defense and that it should be stricken as redundant of, and subsumed within, other equitable defenses.[5]  Moreover, the states aver that, to the extent defendants are found liable for the alleged violations, the court must consider and grant appropriate equitable relief.

In this action, the states are pursuing injunctive relief.  A court may issue a permanent injunction where the moving party has demonstrated that (1) the exercise of jurisdiction is appropriate, (2) the moving party has actually succeeded on the merits of its claim, and (3) the "balance of equities" favors granting injunctive relief.  <u>Chao v. Rothermel</u>,

---

[5]      The states characterize the so-called "balance of equities" defense as, alternatively, an unclean hands defense.  RRI and Sithe aver that their Seventeenth Defense is not an unclean hands defense.  Accordingly, I do not address the states' unclean hands analysis.

327 F.3d 223, 228 (3d Cir. 2003).  Therefore, I cannot conclude

that defendants' "balance of equities" defense has "no possible

relation to the controversy" or may "confuse the issues."  River

Road, 1990 WL 69085, at *3.  Accordingly, I deny the states'

motion to strike defendants' "balance of equities" defense.

*Defenses Specific to Met Ed*

The states contend that Met Ed's Third, Fifth, and

Tenth Defenses should be stricken because they ignore the law of

this case, that is, my September 30, 2009 rulings that the

concurrent remedy doctrine does not bar the states' claims and

that it is a violation of the Act to operate a regulated source

without complying with the Act's PSD provisions.

Met Ed's Third Defense provides that "The penalties and

equitable injunctive relief (to the extent not dismissed by the

Court's Order of September 30, 2009) sought in the Amended

Complaint[s] are barred by the applicable statute of limitations

and concurrent remedy rule or laches, respectively."  (Met Ed's

Answers, Third Defense.)  Above, I have denied the states' motion

to the extent it seeks to strike the laches defense.  Although

the states' motion suggests that the Third Defense should be

stricken in its entirety, it does not specifically address the

statute of limitations defense set forth therein, and so I do not

address it here.  However, the states do expressly challenge the

concurrent remedy defense asserted by Met Ed.

-26-

Met Ed's brief in opposition does not address the states' motion to strike its Third Defense, except, as discussed above, regarding laches.[6]  Therefore, I grant the motion in part as unopposed to the extent it seeks to strike references to the concurrent remedy rule and injunctive relief in Met Ed's Third Defense.[7]

Moreover, my September 30, 2009 Order dismissed all of the states' claims for injunctive relief against Met Ed.  Thus, I conclude that the Third Defense is immaterial to the extent it asserts that claims for injunctive relief are barred, and I strike it to that extent, because such claims have already been dismissed.  Fed.R.Civ.P. 12(f).  Accordingly, I grant the states' motion to dismiss Met Ed's Third Defense to the extent it refers to "equitable injunctive relief" and to the extent it refers to the "concurrent remedy rule."[8]

---

[6]      In its discussion of prejudice, Met Ed does aver that the states "unsupported assertions that Metropolitan Edison's Third...Defense[] 'confuse[s] the issues and impede[s] judicial economy'...do not satisfy the high standard for granting their motion." (Met Ed's brief, page 3.)  However, it does not specifically address the Third Defense elsewhere in its brief, except regarding its assertion of a laches defense and its general contention regarding prejudice, which I have rejected above.

[7]      Rule 7.1(c) of the Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania requires that "any party opposing [a] motion shall serve a brief in opposition...In the absence of a timely response, the motion may be granted as uncontested".

[8]      As noted above, the states do not challenge, by way of meaningful legal discussion, the statute of limitations defense set forth in Met Ed's Third Defense, and so I deny the motion to the extent it purports to seek to strike the defense in its entirety.  Thus, because the states set forth no argument to support an assertion that the statute of limitations reference should be stricken from Met Ed's Third Defense, there is nothing substantive

(Footnote 8 continued):

-27-

Similarly, Met Ed's brief in opposition does not address the merits of its Fifth or Tenth Defenses, aside from its general contention that the states have not shown prejudice which warrants striking any defense asserted by Met Ed, a contention which I have rejected above.

Accordingly, I grant the states' motion as unopposed to the extent it seeks to strike Met Ed's Fifth Defense, which asserts that "[t]o the extent not dismissed by the Court's Order of September 30, 2009, the claims of [the states] for injunctive relief are barred, in whole or in part, because the Clean Air Act does not authorize injunctive relief against continued operation of a source even in PSD requirements were not satisfied. 41 U.S.C. § 7477."[9]  Therefore, I strike Met Ed's Fifth Defense in its entirety.

I further grant the motion as unopposed to the extent it seeks to strike Met Ed's Tenth Defense, which provides that the states' claims "are barred, in whole or in part, because the Clean Air Act and implementing regulations do not prohibit continued operation of a source even if the source did not comply

(Continuation of footnote 8)

for Met Ed to have responded to on that issue, and so I do not consider the motion unopposed in that regard.  Moreover, I note that although not specifically enumerated as a response to the states' motion to strike the Third Defense, it is clear from Met Ed's response that it generally seeks to pursue its statute of limitations defense.

[9]    Alternatively, I would strike this defense as immaterial because I have previously dismissed all claims for injunctive relief against Met Ed.

with any PSD permitting and BACT requirements at the time of construction or modification," and I therefore strike Met Ed's Tenth Defense in its entirety.

The states contend that Met Ed's Sixth and Eighth Defenses should be stricken because they merely dispute the states' interpretation of existing law, and are jurisdictionally barred by the judicial review provisions of the Act. Specifically, Met Ed's Sixth Defense asserts that the states' claims are barred because the states' interpretation of the Act and implementing regulations constitute "retroactive rulemaking" in violation of the APA.

Met Ed's Eighth Defense asserts that

> The interpretations of the NSPS and PSD requirements now espoused by [the states] are unsupported by the current regulations implementing the Clean Air Act, and would require, to be valid and enforceable, new regulations promulgated in full compliance with the Clean Air Act and the Administrative Procedure Act, including public notice and comment. Because the U.S. EPA has not promulgated new regulations in accordance with these requirements, the interpretations asserted by the Plaintiffs are invalid and unenforceable.

Met Ed's Answers, Eighth Defense.

Met Ed contends that its Sixth and Eighth Defenses are proper because they indicate Met Ed's intention to defend itself against the states' incorrect interpretation of the Act and implementing regulations, based on the EPA's longstanding interpretations. Met Ed avers that this is particularly relevant

and permissible because the states argue that they "stand in the shoes" of the EPA for purposes of this citizen suit. Met Ed further contends that the Sixth and Eighth Defenses highlight the unresolved legal issues in this matter, and therefore the defenses should not be stricken.

As clarified by Met Ed's opposition brief, the Sixth and Eighth Defenses do not assert that plaintiffs cannot file this citizen suit without engaging in formal rulemaking. Rather, they are intended to aver that the states' proffered interpretations do not comport with historical interpretations of the same terms in the Act. (Met Ed's brief, pages 7-8.)

Defendants are entitled to challenge the states' interpretation of the applicable laws and regulations. See United States v. American Electric Power Service Corp., 218 F.Supp.2d 931, 948 (S.D.Ohio 2002). Accordingly, I deny the states' motion to strike Met Ed's Sixth and Eighth Defenses.[10]

---

[10] The states cite American Electric for the proposition that defendants may not properly argue that the action itself amounts to a regulation that should have been subject to notice and comment under the APA, and noting that rulemaking under the APA is reviewable only by the Courts of Appeal, not district courts. American Electric, 218 F.Supp.2d at 948. However, because Met Ed has clarified that its Sixth and Eighth Defenses are not meant to challenge the states' action in that manner, but rather to assert that the states' interpretation of the Act and regulations do not comport with historical interpretations by the EPA, I conclude that the defenses are not clearly insufficient. Cipollone, 789 F.2d at 188.

However, I grant the states' motion to the extent it seeks to strike Met Ed's Ninth Defense.  The Ninth Defense asserts that

> The claims of [the states] are barred, in whole or in part, because such attempts to retroactively change the legal status of acts conducted in full compliance with the U.S. EPA's contemporaneous interpretation of the Clean Air Act and implementing regulations fall outside of the State's authority under that act and are <u>ultra vires</u>.

(Met Ed's Answers, Ninth Defense.)

Similar to its contentions regarding its Sixth and Eighth Defenses, Met Ed contends that the Ninth Defense properly argues that plaintiffs' interpretations would constitute an <u>ultra vires</u> application of the law and regulations.  Moreover, Met Ed avers that the Ninth Defense is not an attempt to prevent the states from requiring compliance with the law, or an effort to challenge the facial validity of the law and regulations, but only to preserve Met Ed's "right to challenge interpretations of the governing regulations asserted by the Plaintiffs that are completely at odds with EPA's historical interpretations".  (Met Ed's brief, page 9.)  Met Ed avers that this is relevant in light of the states' assertion that they stand in the shoes of the EPA for purposes of this enforcement action.

The states aver that although they stand in the shoes of the EPA or Pennsylvania for purposes of bringing this enforcement action, they do not assert that they actually *are* the

EPA or Pennsylvania for all purposes.  (States' reply, page 6.)
Thus, they contend that they have a right, under the Act, to
bring this case; but that right grants them no regulatory
authority over the Portland plant.  Moreover, the states aver
that requiring Met Ed to comply with the law is not an <u>ultra</u>
<u>vires</u> act, nor is it an attempt to retroactively change the legal
status of any allegedly compliant acts.

As discussed above, defendants have the right to
challenge the states' interpretation of applicable laws and
regulations.  <u>See</u> <u>American Electric</u>, 218 F.Supp.2d at 948.
However, I conclude that the Ninth Defense confuses the issues
and, therefore, should be stricken.  <u>River Road</u>, 1990 WL 69085,
at *3.

Met Ed's proffered explanation that the Ninth Defense
merely preserves Met Ed's right to "challenge interpretations of
the governing regulations asserted by the Plaintiffs that are
completely at odds with EPA's historical interpretations" mirrors
the clarification Met Ed offers in support of its Sixth and
Eighth Defenses.  Thus, I conclude that Met Ed may generally
pursue its position that the states' interpretations do not
comport with the EPA's historical interpretations through the
Sixth and/or Eighth Defense, discussed above.

The Ninth Defense confuses the issues by suggesting
that the states are "attempt[ing] to retroactively change the

legal status" of modifications made by Met Ed, and that such attempts are outside the states' authority. These suggestions appear unrelated to Met Ed's explanation of the purpose for the defense, as set forth in their brief.

Because the Ninth Defense, as set forth in Met Ed's Answers, does not appear to comport with Met Ed's explanation of the defense in its brief, I conclude that the defense confuses the issues. Moreover, Met Ed is able to pursue this line of defense via its Sixth and Eighth Defenses. Accordingly, I strike the Ninth Defense without prejudice for Met Ed to assert that the states' interpretation of the governing regulations are at odds with EPA's historical interpretations.

Met Ed's Fourteenth Defense asserts that "[the states'] interpretation of the Clean Air Act and implementing regulations in support of their claims effects an unconstitutional delegation of legislative power or authority." (Met Ed's Answers, Fourteenth Defense.) The states contend that this defense should be stricken because there is no claim that the Act's citizen-suit provision constitutes an unlawful delegation of legislative authority to citizen plaintiffs, and because the nondelegation doctrine does not apply to an agency's interpretation of a regulation promulgated pursuant to a statute which does not unconstitutionally delegate legislative power to the agency.

Met Ed responds that its Fourteenth Defense asserts that the states' interpretation of the Act would effectively revise the terms of the Act's PSD provisions and implementing regulations, thereby constituting an inappropriate delegation of legislative power or authority. In support of its Fourteenth Defense, Met Ed cites no legal authority, but contends that the states' motion misinterprets the defense. Specifically, Met Ed avers that the defense "merely points out that EPA...had not, at the time Metropolitan Edison undertook the maintenance activities of which Plaintiffs complain, enforced the law or regulations in the manner that Plaintiffs' suit (if successful) would." (Met Ed's brief, page 14.)

As with Met Ed's Ninth Defense, I conclude that this explanation does not comport with the plain language of the defense and that the defense as pled, therefore, confuses the issues. River Road, 1990 WL 69085, at *3. Moreover, "[i]n a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency." Whitman v. American Trucking Associations, 531 U.S. 457, 472, 121 S.Ct. 903, 912, 149 L.Ed.2d 1, 16 (2001).

Met Ed's response does not address this issue and does not respond to the states' argument that the nondelegation doctrine does not apply in this case, but rather asserts that the defense is meant to point out that at the time of the

modifications, the EPA had not enforced the Act or regulations the way the states contend the Act and regulations should be enforced in this action.

As with Met Ed's proffered explanation for its Ninth Defense, I conclude that Met Ed may pursue its intended basis for its Fourteenth Defense via its Sixth and/or Eighth Defenses. Because the defense, as pled, is confusing as compared with Met Ed's explanation for the defense, and because its proffered reason overlaps with the Sixth and/or Eighth Defenses, I grant the states' motion to strike Met Ed's Fourteenth Defense without prejudice for Met Ed to defend the action on the grounds that the states' interpretations do not comport with the EPA's historical interpretations and enforcement.

Finally, regarding Met Ed's Fifteenth Defense, which asserts that the states' Amended Complaints fail to state a claim upon which relief can be granted, the states contend this defense should be stricken because it ignores the law of this case, i.e., my prior ruling on defendants' motions to dismiss.

Met Ed contends that its Fifteenth Defense is a proper affirmative defense here despite my prior rulings on defendants' motions to dismiss because the statute of limitations issue remained unresolved after my September 30, 2009 Order and Opinion, which concluded that there are fact questions regarding when the states discovered the alleged violations. Met Ed

contends that if the states fail to show, through the development of facts in discovery, that the discovery rule tolls the statute of limitations in this case, the states therefore will have failed to state a claim upon which relief can be granted.

The Federal Rules of Civil Procedure specifically permit an averment of failure to state a claim to be raised as an affirmative defense. <u>Cintron</u>, 2008 U.S.Dist.LEXIS 30716, at *4; Fed.R.Civ.P. 12(b). Moreover, Federal Rule 12(h)(2) provides that a defense of failure to state a claim may be raised in a pleading, by a motion pursuant to Federal Rule 12(c), or at trial.

Met Ed contends that its defense of failure to state a claim is proper despite my September 30, 2009 Opinion disposing of defendants' motions to dismiss. Specifically, I denied defendants' motions to dismiss on the basis that Counts 1-5 and 7-10 as set forth in the states' original complaints were barred by the applicable statute of limitations, because it was unclear from the face of the complaints when the states learned of the alleged violations, and the extent to which they exercised reasonable diligence. (September 30, 2009 Opinion, page 34.) Therefore, I could not determine the extent to which the discovery rule tolled the applicable statute of limitations for claims which otherwise would have accrued outside the limitations period.

As I previously determined, the discovery rule applies
to the states' claims for civil penalties in this action.
(September 30, 2009 Opinion, page 34; see also L.E.A.D. v. Exide
Corporation, 1999 U.S. Dist. LEXIS 2672, at *14 (E.D.Pa. Feb. 19,
1999)(Van Antwerpen, J.)).  However, I did not determine whether
the discovery rule actually operates to toll the applicable
statute of limitations in this case.  Thus, to the extent
defendants may be able to establish that any of the states'
claims are nonetheless time-barred, defendants may be able to
prevail on a defense of failure to state a claim based on the
statute of limitations.  Accordingly, Met Ed's Fifteenth Defense
is not clearly insufficient, and I deny the states' motion to
strike it.

### Defenses Specific to RRI and Sithe

The states contend that RRI and Sithe's Sixth Defense,
which asserts that New Jersey provided inadequate notice of their
claims pursuant to the Act, should be stricken because it is
insufficient as a matter of law, and because RRI and Sithe
admitted in their Answers that New Jersey's notices were
sufficient.[11]  RRI and Sithe assert that the defense is
appropriately pled because paragraph 7 of each of their Answers

_____

[11]     The Sixth Defense, as set forth in RRI and Sithe's Answer to
Connecticut's First Amended Complaint-in-Intervention, states that "[t]o the
extent Connecticut seeks to assert claims not included or adequately described
in New Jersey's notice of intent to sue, the Court is without jurisdiction to
hear those claims."  Thus, in both Answers, RRI and Sithe challenge the
sufficiency of New Jersey's notice of intent to sue.

states, in part, that "RRI and Sithe deny that New Jersey's letter provided adequate notice of all claims as required under 42 U.S.C. § 7604(a)." Thus, RRI and Sithe contend that the issue of legal sufficiency of the notice is at issue in this action, and cannot be determined on a motion to strike.

The Act requires citizen plaintiffs to give sixty days' notice to the alleged violator prior to instituting an action. 42 U.S.C. § 7604(a). The notice must include "sufficient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the date or dates of such violation". 40 C.F.R. § 54.3(b).

Here, RRI and Sithe's answers to the respective amended complaints admit that they received two letters from New Jersey, the first of which purported to provide notice of New Jersey's intent to file a citizen suit regarding certain alleged violations, and the second of which contained additional alleged violations. They further admit that 60 days elapsed between the letters and the respective complaints. However, RRI and Sithe deny that New Jersey's letter provided adequate notice of all claims as required by § 7604(a). (RRI and Sithe's answers,

paragraph 7.)  Thus, it is clear that RRI and Sithe dispute the
sufficiency of the notice.

I conclude that it is inappropriate to strike RRI and
Sithe's Sixth Defense, because it clearly reserves the right to
challenge the legal sufficiency of the notice(s) sent.
See United States v. American Electric Service Power Corp.,
218 F.Supp.2d 931, 950 (S.D.Ohio 2002).  Thus, I cannot conclude
that the insufficiency of the defense is "clearly apparent."
Cipollone, 789 F.2d at 188.  Accordingly, the states' motion to
strike RRI and Sithe's Sixth Defense is denied.

Regarding RRI and Sithe's Ninth and Fifteenth Defenses,
the states contend these defenses should be stricken because I
have already ruled that RRI and Sithe may be liable under the Act
for operating the Portland plant without complying with PSD
permitting requirements.  Because I agree with RRI and Sithe that
my earlier ruling was based on my acceptance of the states' well-
pled facts as true, as I was required to do under the applicable
standard of review for defendants' motions to dismiss, and
because I conclude that there are factual disputes which make the
sufficiency of these defenses unclear, I deny the motion to the
extent it seeks to strike the Ninth and Fifteenth Defenses.

Specifically, RRI and Sithe's Ninth Defense (Projects
Performed by Prior Owner) as set forth in each Answer asserts
that the states' claims against RRI and Sithe "are barred, in

-39-

whole or in part, as to those projects performed by Metropolitan Edison."

The states correctly note that my September 30, 2009 Order and Opinion concluded that although the PSD provisions of the Act do not expressly address the obligations of post-construction owners and operators, it does require ongoing operation in compliance with Clean Air Act standards for sources for which a permit is required, regardless of whether a permit was actually issued. (September 30, 2009 Opinion, pages 37-38.) Thus, I concluded that, to the extent the Portland plant is a facility for which a permit is required under the Act's PSD provisions, RRI and Sithe may be liable to the extent they own and/or operate the plant without complying with standards set forth in the Act even if the offending modifications were constructed by a predecessor owner. (Id. at 38-39.)

Thus, it is the law of this case that RRI and Sithe cannot necessarily escape liability for modifications made by a prior owner simply because they (RRI and Sithe) did not construct those modifications. However, to the extent there are factual disputes regarding whether the modifications made by Met Ed actually violate the Act's PSD provisions, and the extent to which RRI and/or Sithe continue to operate the Portland plant without complying with BACT, RRI and Sithe may be able to establish that they are not liable for projects performed by Met

Ed.  Accordingly, I deny the states' motion to strike RRI and Sithe's Ninth Defense.[12]

The states also challenge RRI and Sithe's Fifteenth Defense (Injunctive Relief is not Authorized by Statute).  In support of this challenge, the states set forth the same argument as for RRI and Sithe's Ninth Defense, discussed above, and argue that RRI and Sithe "fail as a matter of law to escape liability for continued operation without compliance with BACT or other PSD requirements based on their assertion that the Act 'does not authorize injunctive relief against the continued operation of a source even if there was failure to adhere to PSD permitting requirements.'" (States' motion to strike RRI and Sithe's affirmative defenses, page 14, quoting RRI and Sithe's Answers, Fifteenth Defense.)

My September 30, 2009 Opinion does not specifically address whether the Act authorizes injunctive relief against the continued operation of a source even if there was failure to adhere to PSD permitting requirements, and plaintiffs have offered no legal authority in support of their assertion that RRI and Sithe "fail as a matter of law to escape liability for continued operation without compliance with BACT or other PSD

_____

[12]     However, this ruling should not be construed as permitting RRI and Sithe to re-litigate my earlier conclusion that they cannot escape liability solely on the grounds that Met Ed, and not RRI or Sithe, constructed the challenged modifications.

requirements" based on the assertion set forth in their Fifteenth Defense regarding injunctive relief.

Although I have previously concluded, as discussed above, that RRI and Sithe may be liable for continued operation of the Portland plant with allegedly violative modifications made by Met Ed, that ruling did not address whether the Act authorizes injunctive relief in such a situation. Therefore, I cannot conclude based on the "law of the case" that RRI and Sithe's Fifteenth Defense is clearly insufficient, and the states have offered no other legal analysis which challenges their Fifteenth Defense. Accordingly, I deny the motion to strike RRI and Sithe's Fifteenth Defense.

CONCLUSION

For all the foregoing reasons, I deny the states' motion to strike RRI and Sithe's affirmative defenses. I grant in part, grant in part as unopposed, and deny in part the states' motion to strike Met Ed's affirmative defenses.

Specifically, I strike Met Ed's Third Defense to the extent it refers to "equitable injunctive relief" and the "concurrent remedy rule". I strike Met Ed's Fifth and Tenth Defenses in their entirety.

Finally, I strike Met Ed's Ninth Defense and Fourteenth Defenses, without prejudice for Met Ed to assert a defense, consistent with its assertions in its Sixth and Eighth Defenses,

that the states' interpretation of the governing regulations are at odds with EPA's historical interpretations and/or enforcement.

In all other respects, the states' motion to dismiss Met Ed's affirmative defenses is denied.